## Guerra v. Hiduk et ux.

*H. Russell Stahlman*, for plaintiff; *David M. McCloskey*, for defendants.

BROWNSON, P. J., February 2, 1931.—The plaintiff's son, a boy seven years of age, was, on June 29, 1929, shot and killed by Frank Hiduk, a son of the defendants, then twelve years old. The shooting was not done in the presence of either of the defendants. The weapon used was a .22-calibre rifle. The fatal shot was not intended to kill or to hit the deceased, but was negligently fired in the direction of a group of boys (including the deceased) who were playing in an open field, with knowledge of their presence. The plaintiff brought this action to recover damages for the death of her son against the parents of the boy who shot him, alleging that they were negligent in permit-

418

ting their son to possess and use this dangerous weapon. At the trial a compulsory nonsuit was entered as to Susie Hudik, the mother, and the plaintiff has moved that this nonsuit be taken off and that a new trial be granted in order that the case may be submitted to another jury as against both defendants.

The nonsuit was granted upon the ground that no act of negligence on the part of Susie Hiduk, such as could render her liable in this case, had been shown by the plaintiff. There was testimony tending to show that this rifle, which had been purchased by Frank Hiduk himself, was in his possession and control for several weeks previous to the fatal shooting; that during this period he had on several occasions used it in the near vicinity of the defendants' dwelling, shooting at tin cans and other objects, and on one occasion shooting into the yard of a neighbor, toward some chickens of the neighbor that were therein; and that throughout this same period Mrs. Hiduk was residing at home and was in charge of the household. No witness, however, saw her about the house at the specific times referred to, and there was no testimony to the effect that she was, at these particular times, at home and had an opportunity to know, either by seeing her son or hearing the shots which he fired, that he was engaged in using this gun. The shot which killed plaintiff's son was fired from a point beside a gate opening into defendants' yard, but that point was not in sight from the house, and there is nothing to show that Mrs. Hiduk was aware that Frank was playing with the rifle that day. There is no testimony to bring home to her knowledge, at any time previous to the killing, that her son was in possession of the gun at all nor to show that she had precedently given her consent to his purchasing it for his own use or knew that he was going to purchase it. We, therefore, cannot see in the evidence any possible basis for a finding that she was guilty of the negligence charged against her in the statement of claim.

Moreover, even if she did have knowledge, at some time previous to the accident, of the boy's possession of the rifle, it would not necessarily follow that she could be held liable. The husband and father was the head of the family, and it is he that is to be presumed by law to have been in control of the children and upon whom rests the primary duty and responsibility of withholding permission to engage in practices that are dangerous to the lives and limbs of others. If a father, in the exercise of his control over his son, permits the latter to possess and use a dangerous weapon, and the wife does nothing at all except to refrain from attempting to interfere with her husband's control over the son's conduct, we do not think she can be held liable for maintaining this merely negative attitude; she is presumed (in the absence of evidence to rebut the presumption) to be under his domination as to the matter of family government and control. To sustain a joint tort action against husband and wife, some affirmative participating act of negligence on the wife's part, accompanied by evidence to rebut the presumption of constraint (Com. v. Saab, 75 Pa. Superior Ct. 386; Bentel v. Strickler, 8 D. & C. 768); or some concurring negligence committed out of her husband's presence, must be shown: Hynes v. Riehl, 20 Montg. Co. 126; Ford v. Neely, 59 Pa. Superior Ct. 652; Bentel v. Strickler, supra.

It is true that when the husband is absent from home the control of the children will devolve upon the wife; and it is also true that on the day of this happening Mr. Hiduk was away from home, engaged in working at his place of employment in Monessen. But no evidence was offered from which it could be found that on that day, or at any other time, Mrs. Hiduk ever gave her assent, either expressly or tacitly, to the use of this rifle by her son Frank.

The court *in banc* agrees that there was not sufficient evidence to take the case to the jury as against Mrs. Hiduk, and that the entry of the nonsuit by the trial judge was proper.

We also have before us a motion of the defendant, John Hiduk, for the entry of judgment *non obstante veredicto* in his favor, upon the ground that the evidence is insufficient to charge him with having permitted his son Frank to possess, control and use a dangerous weapon.

The instrument of death in this instance, which was exhibited to the jury, was a .22-calibre rifle, firing shells loaded with powder. It was capable of taking the life of a person at a considerable distance. The plaintiff's son was, according to the testimony, at a distance of about 200 feet from Frank Hiduk when the latter fired the shot which inflicted upon the former a wound resulting in death. This gun was no toy, but a dangerous firearm. For a father knowingly to permit his immature son of twelve years to possess and use a weapon of that sort is negligence: Archibald *v.* Jewell, 70 Pa. Superior Ct. 247.

To show that the father knowingly allowed the weapon to remain in the son's possession, the plaintiff testifies that at the coroner's inquest concerning this death Mr. Hiduk made the statement that "he knew he [Frank] had the gun" (though the witness did not remember whether Hiduk said when it was that he first had this knowledge), and that Frank had "sold perfume to get the gun," but the time at which he received it was not fixed so far as the witness could remember. For the defense, it was denied that these statements were made, but whether they were or were not was for the jury. That if made, they referred to knowledge anterior to the shooting of this boy is indicated by the fact that the witness testified further than Mr. Hiduk said also at the inquest that "he didn't know it was a dangerous gun, he said he thought it was a play gun;" a statement evidently made as an excuse for not taking the gun out of the boy's control, for he certainly would not, after it had taken the life of young Guerra, have any such idea as that it was a toy, and indeed other testimony shows that as soon as he learned of the shooting he searched for the rifle and bent the barrel so as to prevent any further use. The statements testified to could, then, be interpreted as meaning, and from them the jury (whose province it was to interpret them) could find that Mr. Hiduk knew before this fatal happening that this rifle was in the possession and control of his son, and that he allowed it to remain therein because he did not think it was a dangerous gun. But whether it was an act of negligence to permit a boy of twelve to possess and control such a weapon as this rifle is to be determined upon the view taken by the jury as to its nature and character, and not by the opinion entertained on this subject by the defendant at the time. Nor can an opinion so entertained, however honest it may have been, which was the result of a neglect to inform himself as to the degree of danger that is incident to the possession by a boy of the weapon which he knew his son had, relieve the defendant from liability, when in fact the weapon was so dangerous as to render it improper to let it remain in the boy's control. Ignorance resulting from a negligent failure to inquire, after having been put upon inquiry, is no defense.

It is argued, however, that it is not sufficient to show that the father permitted his son to own a gun; it must also appear that he permitted the son to use it, and that as it does not appear that the boy ever used this gun in the father's presence, or had ever received express permission to make use of it, this is not made out. But what does a boy get and keep a gun for? Manifestly, to use it for the purpose for which it was made. Any father who,

knowing that his son possesses a rifle which is dangerous in the latter's hands, allows it to remain in the son's unconditional and unlimited control, knows that the son is likely to—indeed, we may say, knows that he will—make use of that rifle by shooting with it; and, therefore, an express or tacit permission thus to have it in possession and control amounts to permission, express or tacit, to make use of it, and is not the act of an ordinary prudent and cautious man.

We think there was sufficient evidence to justify the submission of the case against John Hiduk to the jury.

And now, February 2, 1931, the motion of the plaintiff to take off the nonsuit as to Susie Hiduk and for a new trial is denied and dismissed; and the motion of John Hiduk for the entry of judgment in his favor *non obstante veredicto* is overruled and dismissed.

From Harry D. Hamilton, Washington, Pa.