Jackson *v.* Capello et al., Appellants.

92

Argued March 11, 1963. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*William S. Bailey,* with him *John B. Pearson,* and *Bailey, Pearson & Bolton,* for appellant.

*James H. Stewart, Jr.,* with him *Wilhelm E. Shissler,* and *Nauman, Smith, Shissler & Hall,* for appellant.

*Arthur Berman,* with him *Compton, Handler, Berman & Boswell,* for appellee.

OPINION BY WATKINS, J., June 12, 1963:

James Jackson the plaintiff-appellee, brought this action in trespass in the Court of Common Pleas of

Dauphin County against William L. Capello, Grace A. Capello, his wife, William Capello, a minor, Charles B. Weaver, Jr., Betty M. Weaver, his wife, and Charles Weaver, III, a minor, as defendants, for personal injuries alleged to have arisen on September 29, 1958 when the plaintiff claims he was shot in the left thigh by a bullet.

The minor defendants William and Charles had their respective fathers named guardians ad litem. The case was tried before Judge KREIDER of the court below and compulsory nonsuits were entered in favor of the two mothers and it went to the jury as to the liability of the minor boys and their fathers. The jury entered a verdict in favor of the fathers individually, William L. Capello and Charles B. Weaver, Jr., as defendants, but found against them jointly as guardians ad litem of the minor defendants, in the sum of $2000.

The plaintiff filed a motion for a new trial and a motion to take off the nonsuit granted in favor of the mothers. A motion was filed on behalf of the minor defendant, Charles Weaver, III, for judgment n.o.v. The court below denied the motion for judgment n.o.v.; denied the motion to remove the nonsuits; but granted the plaintiff's motion for a new trial on the ground that the verdict was inadequate and limited the new trial to the consideration of damages only.

The defendant Weaver appealed from the refusal of his motion for judgment n.o.v. and from the granting of a new trial on the ground of inadequacy limited to damages, and the defendant Capello has appealed from the granting of a new trial on the ground of inadequacy limited to damages.

On September 29, 1958 at about 4:45 p.m., the plaintiff was injured when struck by a bullet fired by the minor, William Capello, from a rifle owned by another minor, Charles B. Weaver, III. At the

time William was 16 years of age and Charles was 12 years old. The boys having first secured permission from their fathers, were shooting targets in an area known as the Hollows, in the area of Swatara Township. At the time each of the boys owned a 22 caliber Marlin rifle which they had with them in the Hollows. While shooting in the general area, Weaver thought that the telescopic sight on his rifle was not accurately set and the younger boy's gun was transferred to Capello in order that the older boy might check the accuracy of the sight. A shot fired by Capello from the gun of Weaver at a cornstalk to check the accuracy of the sight caused the bullet, directly or by riccochet, to strike the left thigh of the plaintiff.

The plaintiff testified that prior to entering The Hollows he shouted, "Stop that shooting, I'm going down to my garden"; that after hollering he waited three or four minutes, heard no shots and then descended to the bottom of the Hollows; that while crossing a small stream he heard a shot and then immediately felt a sting in his leg; and that he then shouted, "who fired that shot?" The boys admitted having heard the shout after the shot was fired but not the warning before the shot was fired and by reason of the tone of voice they ran away.

The principal argument in support of Weaver's motion for judgment n.o.v. is that there was insufficient evidence to show that the Capello boy was the agent of the Weaver boy at the time of the shooting. We agree with the disposition made by the court below of this motion and adopt that portion of the court's opinion, reading as follows:

"The evidence established that while the boys were shooting in the general area of The Hollows, Charles thought that the telescopic sight of his rifle was not accurately set, whereupon his rifle was transferred to William in order that the older boy might check its

accuracy. The Capello boy was a marksman of ability. He had been trained in the Police Athletic League and was a member of the National Rifle Association and had been licensed to hunt by the Commonwealth of Pennsylvania. . . .

"In Mifflin Riding Assn. v. Western Mutual Fire Ins. Co., 376 Pa. 157, 160, 161 (1954), the Court speaking through Mr. Justice MUSMANNO, stated: 'This litigation involved an issue of fact—and fact alone . . . that issue was submitted to the jury. "It is a well established principle that whatever evidence has a tendency to prove an agency is admissible even though it be not full and satisfactory, and it is the province of the jury to pass upon it. 'Direct evidence is not indispensable—indeed, frequently is not available—but instead circumstances may be relied on, such as the relation of the parties to each other and their conduct with reference to the subject matter of the contract.' " (Osborne v. Victor Dairies, 138 Pa. Superior Ct. 117).' . . .

"In considering the Weaver motion for judgment n.o.v. we are required to view the testimony in the light most advantageous to the plaintiff, giving him the benefit of every reasonable inference. In Downey v. Rymorowicz, 397 Pa. 205, at 207 (1959), the Court, in an opinion written by Mr. Justice McBRIDE, said: 'We need consider only the contention that Rymorowicz is entitled to judgment n.o.v. In doing so we shall view the testimony in the light most advantageous to plaintiffs, giving to them the benefit of every inference that might reasonably be deduced from the evidence and resolving all conflicts in their favor. Koehler v. Schwartz, 382 Pa. 352, 115 A. 2d 155; Beatty v. Hoff, 382 Pa. 173, 114 A. 2d 173.'

"In Feagles v. Sullivan, Gdn., 32 Pa. D. & C. 47 (1938), Phila. Co., Brown, Jr., J., it was held that a minor who, having borrowed his father's automobile,

permits a companion to drive it in order to see how it runs, while he sits beside him, is liable for the companion's negligence, not only on the basis of respondeat superior, but also on the ground that, because of his presence, he has such a high degree of control over the driver, the negligence of the driver is legally his.

"In the instant case the jury undoubtedly found the Capello boy to be the agent of Charles Weaver III even though William may have been a volunteer in checking the gun sight. In the Restatement (2d), Agency, it is stated: (p. 497) '§225. Person Serving Gratuitously. One who volunteers services without an agreement for or expectation of reward may be a servant of the one accepting such services.'

"We think there was sufficient evidence to support a finding by the jury that William was the agent of Charles Weaver III at the time the Capello boy fired the shot which wounded the plaintiff."

We also agree with the disposition of the complaint of Weaver as to the contributory negligence of the plaintiff. "Contributory negligence should not be declared to exist as a matter of law unless such negligence is so clearly revealed that reasonable individuals cannot disagree as to its existence." *Greco v. 7-Up Bottling Co. of Pgh.,* 401 Pa. 434, 446, 165 A. 2d 5 (1960). The action of this plaintiff in shouting, and the waiting three or four minutes before proceeding into the Hollows even though the two minors testified they only heard him "holler" after he was shot, was certainly not that type of evidence to find the plaintiff guilty of contributory negligence as a matter of law.

We also agree with the action of the court below in refusing to take off nonsuits entered in favor of Grace A. Capello and Betty M. Weaver, the mothers of the minor boys. As the court below said: "The uncontradicted evidence is that each of the minor defendants secured the permission from his father to go target

shooting in The Hollows on the day in question. The mothers did no more than acquiesce in the decision of their husbands who in law are still the heads of their households." The court below also quoted with approval *Guerra v. Hiduk,* 16 Pa. D. & C. 417 (1931), a Washington County case, which held: "If a father, in the exercise of his control over his son, permits the latter to possess and use a dangerous weapon, and the wife does nothing at all except to refrain from attempting to interfere with her husband's control over the son's conduct, we do not think she can be held liable for maintaining this merely negative attitude; she is presumed (in the absence of evidence to rebut the presumption) to be under his domination as to the matter of family government and control."

The grant of a new trial on the grounds of inadequacy limited to damages alone, under the facts in this case, was an abuse of discretion. We cannot understand why, under the circumstances of this case, the court below brushes aside the possibility of its being a compromise verdict. The verdict of $2000 is certainly not nominal and when, under the facts of this case, there was serious dispute as to whether the plaintiff was shot at all; serious dispute and argument as to contributory negligence; serious dispute as to the legal responsibility of the appellant under the agency theory; all of which were carefully set forth in the court's charge containing 63 pages, it seems to be just the type of case that a jury in coming to a unanimous conclusion must compromise.

A close examination of the evidence in this case makes the accurate estimate of his earnings impossible. It is only certain that he lost wages but whatever amount is fixed could only be a guess. As the court said in the charge: "What is the evidence on that? (loss of earnings) That's for you. There is evidence that he made as much money after the alleged injury

as he did before the injury. However, the law is also to this effect, that if a man has been injured through the negligence of another, and that he suffered an injury which decreased his earning power permanently in the future, that he can recover for that diminution of earning power even though he made more money after the accident than he did before. So you will consider how that is. . . . If you find that the plaintiff is entitled to damages, of course he would be entitled to recover his medical bills, his hospital bills, his loss of clothing, and he would be entitled to damages for pain and suffering. Now on that phase of the case we cannot give you any yardstick or measure by which you may determine what he should receive for his pain and suffering."

The plaintiff's testimony established that he sustained hospital expenses in the amount of $495.75 and medical expenses of $160. In addition, the plaintiff made a claim for a cleaning bill of $5.90. He also claims transportation charges to the doctor's office of $2 per trip for ten trips, or $20. This, if the jury awarded it all, amounted to $681.65.

As to loss of wages, the evidence is indeed most confusing. He failed to work during the period from September 29, 1958 until January 5, 1959, a period of 69 working days. There was also evidence that work was not available for 23 days of this time. There was also a conflict as to whether, when he was working he was paid as a chipper at $2.46 per hour, or if he worked at a lesser hourly rate. Even if the jury decided, and they weren't bound to, to give him 69 days loss of wages, the most it could amount to, based on his maximum claim, was $1357.92, while the defendant claims the total could only come to $905.28, and the jury was not bound by either the maximum claimed by the plaintiff or the minimum claimed by the defendant. Certainly, under this record the jury was justified in

cutting down the hourly rate and the maximum claimed. His total claim of out-of-pocket expenses amounted to $2039.57, while based on the estimation of the defendant, who took into consideration certain doubtful items, which the jury could have also done, amounted to $1424.65.

Most certainly the jury was not bound to believe everything stated by the plaintiff. In *Karcesky v. Laria*, 382 Pa. 227, 114 A. 2d 150 (1955), Justice BELL, now Chief Justice, said, at pages 234, 235:

"The doctrine of comparative negligence, or degrees of negligence, is not recognized by the Courts of Pennsylvania, but as a practical matter they are frequently taken into consideration by a jury. The net result, as every trial judge knows, is that in a large majority of negligence cases where the evidence of negligence is not clear, or where the question of contributory negligence is not free from doubt, the jury brings in a compromise verdict. Moreover, it is important to remember that neither a jury nor a judge who sees and hears the witnesses have to believe everything or indeed anything that a plaintiff (or a defendant) or his doctor, or his other witnesses say, even though their testimony is uncontradicted.

"Where the evidence of negligence or contributory negligence, or both, is conflicting or not free from doubt, a trial judge has the power to uphold the time-honored right of a jury to render a compromise verdict, and to sustain a verdict which is substantial—a capricious verdict or one against the weight of the evidence or against the law, can and should always be corrected by the Court.

"Where the verdict is, as here, substantial, a new trial 'for inadequacy' should be granted only when the trial court is convinced the verdict is so unreasonably low as to present a clear case of injustice even in the light of the doubtful negligence of defendant or the

doubtful contributory negligence of the plaintiff, or both."

Also in *Elza v. Chovan*, 396 Pa. 112, 152 A. 2d 238 (1959), the late Justice Bok, speaking for the majority, said, at page 115:

"The mere fact that a verdict is low does not mean that it is inadequate. Nominal damages have been upset: Bradwell v. Railway Co., 139 Pa. 404, 20 A. 1046 (1890); Spence v. Stockdale Borough, 57 Pa. Superior Ct. 622 (1914), and have been allowed to stand: Palmer v. Leader Publishing Co., 7 Pa. Superior Ct. 594 (1898).

"The same is true of low but substantial verdicts. In Stevens v. Frank, 151 Pa. Superior Ct. 222, 30 A. 2d 161 (1943), a judgment of $200 for a wife and nothing for her husband was affirmed. In Ewing v. Marsh, 174 Pa. Superior Ct. 589, 101 A. 2d 391 (1953), a verdict of $3000 was upheld, the court saying: 'This was low, but certainly not a nominal verdict such as would give rise to an inference of mistake or partiality by the jury.' And in Alleva v. Porter, 184 Pa. Superior Ct. 335, 134 A. 2d 501 (1957), where the verdict was low but substantial, the grant of a new trial was reversed and judgment was entered on the verdict.

"There is no magic in amounts but only in the circumstances, and compromise verdicts are both expected and allowed: Karcesky v. Laria, 382 Pa. 227, 114 A. 2d 150 (1955). The compromise may arise out of damages or negligence or the balance of evidence concerning either or both, and the grant of a new trial may be an injustice to the defendant rather than an act of justice to the plaintiff: See Patterson v. Palley Mfg. Co., 360 Pa. 259, 61 A. 2d 861 (1948)."

And in *Raffaele v. Andrews*, 197 Pa. Superior Ct. 368, 178 A. 2d 847 (1962), which involved an injury to the plaintiff's leg, the out-of-pocket expenses amounted to. $873. and the jury brought in a verdict for that

exact amount, and this Court said: "From a review of the record it appears that the appellant's injuries and the consequent result of the injuries was fairly conveyed to the jury and was fairly treated in the charge of the court below, and the verdict by the jury was not for a nominal sum but represented the out-of-pocket expenses in toto of the plaintiff, . . ."

It is true that in this case the Court was affirming the action of the court below in refusing to grant a new trial on the ground of the inadequacy of the verdict. But it seems obvious that the plaintiff in the instant case had far less reason than Raffaele to complain of the size of the verdict. The right of the jury to bring in a compromise verdict, where the issue of liability is not clear, and there are conflicting versions as to the negligence of the defendant and the contributory negligence of the plaintiff, was upheld by this Court in *Walbert v. Farina*, 199 Pa. Superior Ct. 361, 185 A. 2d 825 (1962).

The court below should have taken into account the complexity of the issues in this case, especially the evidence of the damages for loss of earnings and the fact that the jury was being asked to impose liability on a twelve year old boy for the act of his sixteen year old companion. We feel that this verdict was substantial and if not completely compensatory it represents a compromise that could be well expected from the conflicting evidence of liability.

The order awarding a new trial on the ground of inadequacy relating to damages only is reversed, the verdict reinstated, and it is directed that judgment be entered on the verdict.