**MITCHELL–HUNTLEY COTTON CO., INC., Plaintiff,**

v.

**Earl WALDREP et al., Defendants.**

**Civ. A. No. 73–G–916–NW.**

United States District Court,
N. D. Alabama,
Northwestern Division.

Feb. 25, 1974.

Patrick W. Richardson, Bell, Richardson, Cleary & Tucker, Huntsville, Ala., for plaintiff.

Charles D. Rosser, Tuscumbia, Ala., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GUIN, District Judge.

The court has subject matter jurisdiction under 28 U.S.C. § 1332 by reason of the amount in controversy and diversity of citizenship. Plaintiff is a Delaware corporation and has its principal office in the State of Tennessee. All Defendants reside in the State of Alabama. The amount in controversy exceeds $10,000, exclusive of interest and costs.

The several Defendants are properly joined pursuant to Rule 20(a), Federal Rules of Civil Procedure. Plaintiff asserts against the Defendants severally a right to relief arising out of the same series of transactions and questions of law and fact common to all Defendants are involved in this action.

Complaint was originally brought against Earl Waldrep, Charles Keeton, Bennie Worsham, Howard Keeton, M. E. Blacklidge, Tommy Waldrep, Ralph W. Rutland, C. O. Bishop, Bill Blackburn, W. H. Blackburn, Jr., Charles Bishop and Owen D. Foster, also known as Danny Foster. Defendants Ralph W. Rutland and Owen D. Foster were stricken on motion of Plaintiff. Final judgment has heretofore been entered against Defendants Earl Waldrep and Tommy Waldrep by agreement. The action came on for trial and final judgment as to the remaining Defendants: Charles Keeton, Bennie Worsham, Howard Keeton, M. E. Blacklidge, C. O. Bishop, Bill Blackburn, W. H. Blackburn, Jr. and Charles Bishop, hereinafter termed "Defendants", upon the issues raised by the Complaint of Plaintiff and Answer on behalf of all Defendants, as defined in the pretrial order.

This case arises out of identical contracts made by the several Defendants, separately, with Mitchell-Huntley Cotton Co., a joint venture, all dated February 15, 1973, whereby each Defendant agreed to sell to the said joint venture at a basic price of $.30 per pound (subject to specified deductions on account of grade, etc. as set out in the respective contracts) "all of the cotton planted and produced by seller during the crop year, 1973, on (a specified number of) acres, more or less, located in Colbert County, Alabama (identified by ASCS farm serial numbers) . . . and buyer (agreed to) accept and purchase all cotton produced hereunder that is ginned up to and including December 15, 1973." The contracts of Defendants Bennie Worsham, Howard Keeton, Bill Blackburn and W. H. Blackburn, Jr. were subsequently modified by identical supplementary agreements providing that they agreed to sell at a basic price of $.40 per pound and buyer agreed to purchase, cotton planted over the legal allotment on the same farms identified on their respective original contracts. The subject contracts, including the modifications referred to, were exhibited with the Complaint and introduced into evidence. All of the subject contracts were later transferred by the said joint venture to

Plaintiff by written agreement under which Plaintiff assumed all obligations of the joint venture under the respective contracts.

Plaintiff is engaged in the business of buying cotton from producers and others and selling and delivering same to textile mills and others. Defendants are all farmers engaged in the growing and selling of cotton and other farm products.

Subsequent to February 15, 1973, the date of Plaintiff's first contracts with Defendants, a drastic shortage of cotton developed and the price for same on the open market had increased to an amount in excess of $.80 per pound by September 25, 1973, the date of the verification and filing of Plaintiff's Complaint, at which time cotton was maturing and in the process of being picked, ginned and delivered. When the cotton produced by Defendants was picked and ginned, it could be stored by them in places unknown to Plaintiff and disposed of so as to put it beyond the reach of Plaintiff. The cotton in question is unique and irreplaceable because of the scarcity of cotton described. An actual controversy exists as to the validity of Plaintiff's contracts with Defendants. Defendants jointly brought an action in the Circuit Court of Colbert County, Alabama, seeking to have their said contracts declared null, void and unenforceable and in the alternative that they may refrain from ginning their cotton until after December 15, 1973, and be no longer bound thereby.

Plaintiff sues herein for a Declaratory Judgment that its contracts with the respective Defendants are valid and enforceable; an injunction, pendente lite, enjoining Defendants from violating said contracts, aiding, abetting or encouraging others so to do, from delaying in the prompt harvesting, ginning and delivery to Plaintiff of the cotton subject thereto, promptly as same matures, and from removing, secreting or disposing of said cotton, other than to Plaintiff, and a Declaratory Judgment that

each contract must be specifically performed.

It is the custom and usage in the trade to harvest and gin cotton promptly as same matures. Plaintiff stood ready, willing and able to perform said contracts. Plaintiff is obligated by contract to deliver to Riegel Fibre Corporation of Trion, Georgia, the cotton called for by its several contracts with the Defendants. The majority of all cotton to be produced in the United States in the 1973 crop year has been sold under contracts similar to those here at issue. There is no substantial carry-over of merchantable grades and classes of cotton from prior years in storage in the United States and there will be very little cotton available for purchase in the open market through the 1973 cotton season. Plaintiff's purchaser, Riegel Fibre Corporation, has obligated itself to produce and deliver goods at prices based upon the prices at which it bought the cotton at issue from Plaintiff. Plaintiff and Riegel Fibre Corporation are directly dependent upon Defendants to perform under Plaintiff's said contracts with them in order for Plaintiff to perform its contract with Riegel Fibre Corporation and the latter to perform its contracts to deliver goods. Unless Defendants were enjoined from delaying in the normal harvesting, ginning and delivery of the cotton which is the subject of this suit, Plaintiff would have suffered irreparable losses and damage specified in the Complaint.

Defendants denied diversity of citizenship; denied that they acted through one Nathaniel Reid, a cotton ginner, in entering into the subject contracts, as alleged by Plaintiff, but alleged that Reid was acting as agent for Mitchell-Huntley Cotton Co., the joint venture, denied the validity of the subject contracts and denied the necessity for injunction.

As to these contentions, the Court finds from the evidence first, as set forth at the outset hereof, that Plaintiff is a Delaware corporation and has its

principal place of business in the State of Tennessee. Defendants offered no evidence to the contrary and, without dispute, themselves all reside in Alabama. The Court has considered the evidence touching the controversy as to the role of Nathaniel Reid and finds therefrom that he acted as mutual accommodation agent for the Defendants and the Plaintiff. As to the denial of validity of the subject contracts, the findings and conclusions of the Court will be fully stated hereinafter. On a separate earlier hearing of the application for temporary injunction the Court has already found the facts to be in support of the Plaintiff's position and concluded that the Plaintiff was entitled to an injunction pendente lite. Further evidence taken upon a later hearing on an order to several (but not all) of the Defendants to show cause why they should not be held in contempt for violation of the temporary injunction supports the prior finding of the Court that there was a necessity for the injunction.

By way of affirmative defenses, Defendants allege: FIRST, that they entered into the subject contracts in reliance upon information concerning Mitchell-Huntley Cotton Co. (the joint venture) given them by Nathaniel Reid that the said company and the members thereof were financially sound when in fact they were not and would not have been able to perform the subject contracts had the price of cotton decreased; SECOND, that they were led to believe by Reid that they had the absolute option under the contracts to refrain from ginning their cotton until after December 15, 1973, whereupon they would no longer be bound by the contracts; THIRD, that Reid led them to believe that they were dealing with two individuals, when in fact they were dealing with a corporation and a partnership or joint venture headed by R. E. Huntley who was then and thereafter insolvent and had they known the true and correct entity they were dealing with they would not have entered into the subject contracts; FOURTH, that the contracts lacked mutuality in that they give the buyer the right to be relieved thereunder after December 15, 1973, whereas they do not give the Defendants the same right; FIFTH, that the contracts were assigned by the buyer to Plaintiff corporation without knowledge of Defendants; whereas, the contracts were not assignable, being for personal services in the growing of cotton and for the sale of a commodity to be grown in the future; SIXTH, that Title 9, § 55, Code of Alabama 1940, prohibits specific enforcement of the subject contracts because they entail the obligation to render personal service in the growing, harvesting and ginning of cotton; SEVENTH, that Title 9, § 44, Code of Alabama 1940, renders the contracts void because founded in whole or part on a gambling consideration in the uncertainty of the price of cotton at the time of ginning and, EIGHTH, that Title 9, §§ 29–40, Code of Alabama 1940, render the contracts void because they are contracts for the future delivery of a commodity wherein the parties did not intend a delivery and because the subject contracts were not made subject to the provisions of Federal Statute relating thereto.

As to these affirmative defenses the court finds and concludes as follows:

 FIRST. Under the statutes and decisions of Alabama, misrepresentations made to one party to a contract by the other are actionable if relating to material fact, if made fraudulently and intentionally, or in ignorance of the true fact but with reckless disregard thereto, and if acted upon by the other party to his detriment. Here the representations complained of were of fact and doubtless material, that is, the financial capacity of the buyer to pay for the subject cotton, had the price declined. However, it is not shown that in making these representations Reid was acting as agent for the buyer nor that the buyer induced the representations to be made, participated therein or supplied the information so represented. From the pertinent evidence, almost entirely in the testimony of Reid, the Court finds that he acted

independently of the buyer and upon his own volition in conducting such inquiry as he deemed necessary and sufficient through sources unrelated to the buyer and that he so acted or endeavored in behalf of the Defendant sellers, not the buyer. Furthermore, there is no evidence of detriment to the Defendant sellers in their entering into the subject contracts in reliance upon these representations. While it is true that, had the price of cotton declined, the buyer might have been unable to perform (though this is not established as fact from the evidence), that did not occur and, therefore, the Defendant sellers have suffered no detriment. The sellers might have deemed their rights to performance by the buyer (payment for the cotton) insecure and demanded assurance. Had they done so and had the buyer (or the Plaintiff as assignee from the buyer) failed to give such assurance within thirty days after the demand, the sellers would have been relieved of their obligations to perform under the contracts by the provisions of Code of Alabama 1940, Title 7A, § 2–608, as amended (§ 2–608 of the Uniform Commercial Code); but no such demand is shown to have been made. Therefore, the financial condition of the original buyer is immaterial. It is established by the evidence that the Plaintiff stood ready, willing and able to pay for the cotton upon its delivery. Capacity to perform at the time for performance, thus shown, is all that is required. Essentially the same point is raised by the THIRD affirmative defense that the Defendants were misled as to the entity with which they were contracting and would not have entered into the contracts had they known the true facts. Again, while this might be so, although not established from the evidence, it would not, alone, constitute a defense under Alabama law. The evidence fails to establish the misrepresentation alleged and no detriment to the Defendants is shown.

 The second and fourth affirmative defenses relate, respectively, to alleged representations by Reid as to the effect of the December 15 cut-off provision of the contracts and its effect upon their mutuality. Defendants did not establish by the evidence that Reid represented to them that this provision had the effect they allege; but regardless of that, the matter is one of opinion as to the legal effect of the contract provision and, therefore, is not sufficient basis for relief under the Alabama decisions and the circumstances of the parties as shown from the evidence. If the effect of this provision were to give the buyer an option to take or reject cotton ginned after December 15, the provision would not, of itself, render the subject contracts unenforceable for want of mutuality. Option contracts are enforceable under the Alabama decisions, if supported by consideration. Here, the court finds that there was consideration for such an option in the agreement of the buyer to purchase "all cotton that has a grade eligible for the 1973 Government Loan . . . ginned up to and including December 15, 1973." However, the Court finds the contracts to be ambiguous as to the effect of this provision; whether it gives the buyer an option to take cotton ginned after December 15 or limits the terms of purchase to cotton ginned through that date. The intent is not clear from a consideration of the contracts themselves. Therefore, the Court considers extrinsic evidence of the intent, including the interpretation of the parties, as appears from their actions and declarations related to the issue. From the evidence the Court finds the provision to be one of limitation, subject to an implicit obligation upon the defendants of good faith performance in the light of trade usage established by the evidence that they harvest and gin the subject cotton in the normal course, promptly as it matured.

 Special defenses FIFTH and SIXTH contend that the subject contracts were not assignable from the original buyer to the Plaintiff and may not be enforced by decree of specific

performance, because they entail personal services in the growing, harvesting and ginning of cotton. While it is the law of Alabama that a contract to render "personal services" may not be assigned or enforced by specific performance, the "personal services" falling within such rule are those of a strictly personal nature, such as the services of an artist in painting a portrait. Whether performance must be by the person undertaking the contract or may be delegated to another, within the contemplation of the parties, appears to be the crux. (§ 2–210, Uniform Commercial Code; Code of Alabama 1940, Title 7A, § 2–210, as amended). In the case of contracts not involving such element of performance by the *particular* person involved, the reason fails and the rule does not apply. Indeed, were it otherwise, few contracts would be assignable or subject to specific performance, since most involve the action of *some* one or more persons in their performance. Where, as here, the performance may as well be by one person (having only the rather widespread qualification of a knowledge of cotton farming) as another, the services to be performed are not "personal" and the contract may be assigned and enforced by specific performance.

 Special defenses FIFTH, SEVENTH and EIGHTH raise the contention that the subject contracts fall within the prohibitions of Code of Alabama 1940, Title 9, §§ 29–40 and 44 because they relate to sale of cotton to be grown in the future and, thus, involve an uncertainty of the price at the time of ginning, which is characterized as "a gambling consideration" in the SEVENTH special defense. Most of the states have enacted statutes similar to these of Alabama. Commonly referred to as "bucket shop" acts, they are aimed at a specific evil, gambling on the future price of commodities and securities. They are universally construed as having no application to contracts wherein the parties intend a bona fide sale and delivery of the commodity and the Ala-

bama statutes are expressly so limited. Defendants impliedly concede this by the contention of their EIGHTH special defense that "the parties did not intend an actual delivery". Defendants wholly failed to meet their burden of proof of this allegation. All evidence in fact, was to the contrary. Section 2–501 of the Uniform Commercial Code (Code of Alabama 1940, Title 7A, § 2–501, as amended) makes valid contracts for the sale of crops to be grown within twelve months or the next normal harvest season even though not planted at the date of contract. Being a later enactment than the "bucket shop" act, this UCC provision would control, even had the former been applicable to contracts for actual sale and delivery.

 Although not specifically raised by the pleadings or in the pretrial order, the parties have raised and submitted by evidence and briefs an issue as to the right, vel non, of some defendants to withhold from delivery to Plaintiff under the subject contracts certain quantities of cotton which these defendants contend is the property of their respective landlords, as rent of the land on which it was grown under crop-sharing rental agreements. Like other agricultural states, Alabama has developed a considerable body of law, primarily statutory, on the rights of agricultural landlords and tenants, particularly under crop-sharing agreements. At outset, it is clear that the landlord has a lien upon the tenant's crop for his rent (Code of Alabama 1940, Title 31, § 15.). However, the question here at issue is not of the respective rights and remedies as between landlord and tenant or as between landlord and buyer, but as between the parties in suit, tenant and buyer. The subject contracts clearly include *all* 1973 cotton grown on the subject lands, subject only to limitations already mentioned. No exception or reservation is made as to any landlord's interest; but, to the contrary, each contract expressly provides that the seller warrants that he has the right to sell and convey the cotton covered by the contract and that the

cotton is free from liens. Each contract further provides that if any other party has any interest in the subject cotton, "including landlord," such party executes the contract, agreeing to its terms insofar as his interest is concerned. Thus each defendant has expressly purported to sell all of the 1973 cotton grown on the identified lands (subject to the aforementioned limitations, which are not material to the present question) and to expressly warrant the title to all such cotton to be free from liens and other interests, "including landlords". Such express warranty is redundant, a warranty of title being implied from the contract to sell. (Uniform Commercial Code, § 2–312; Code of Alabama 1940, Title 7A § 2–312). It serves principally, therefore, to emphasize the seller's undertaking to convey to the buyer *all* of the subject cotton. The question, then, is whether there is any legal impediment to such undertaking as between the seller and the buyer, laying aside as irrelevant any question as to the legal effect of the undertaking as between the seller or the buyer and any landlord or other third person having or claiming an interest or lien in the cotton.

Section 2–501 of the Uniform Commercial Code (Code of Alabama 1940, Title 7A, § 2–501, as amended), previously referred to, lays to rest any question of the validity of the subject contracts with respect to their subject matter, the sale of crops to be grown in the next normal harvest season, as contracts to purchase goods. Section 2–403 (Id., § 2–403) provides that a purchaser of goods acquires all title which his transferor had. Therefore, the sole remaining question is whether the tenant has title to that part of the crop affected by the landlord's lien for rent.

■ Under a crop-sharing agricultural land rental agreement whereby one party furnishes the land and the other furnishes the labor to cultivate it, this relation is that of landlord and tenant "with all its incidents, and to all intents and purposes", by provision of Code of Alabama 1940, Title 31, § 23. Alabama decisions hold that in this relationship the legal title and right to possession of the entire crop is in the tenant, subject to the lien of the landlord for rent. (White v. First National Bank of Opp, 236 Ala. 589, 183 So. 875; Heaton v. Slaten, 25 Ala.App. 81, 141 So. 267.) It necessarily follows therefore, that by the subject contracts the defendants are obligated to deliver to plaintiff *all* 1973 crop cotton produced on the lands identified in the respective contracts, within the limitations provided therein as construed hereinbefore, regardless of the claims of any landlords. This is, of course, without prejudice to the rights of any landlords to their claims against the respective defendant tenants for rent or liens therefor.

■ The Court concludes and adjudges, therefore, that each of the subject contracts is binding and enforceable; that each defendant, respectively, is obligated thereby to pick and gin all 1973 crop cotton produced on the land identified in his respective contract promptly as same matures, in the bona fide exercise of normal good farming practice, and to deliver all such cotton so ginned through and including December 15, 1973 to plaintiff upon payment of the contract price therefor; that plaintiff is entitled to specific performance of each said contract as so construed by the Court; and that the preliminary injunction heretofore entered should be made permanent.

Jurisdiction is retained for determination of any supplementary relief to which plaintiff may be entitled under this judgment and the taxation of costs.