Gregory NICHOLAS, Jean Nicholas, his wife, and Gary Folger, Arlene Folger, Carol Folger, and Veronica Nicholas, minors by their next friends, Gregory Nicholas and Jean Nicholas, Appellants,

v.

Daryl Joseph MOORE, Appellee.

No. 2963.

Supreme Court of Alaska.

Oct. 21, 1977.

David A. Engles, Rice, Hoppner & Hedland, Anchorage, for appellants.

Robert H. Reynolds, Robison, McCaskey, Reynolds & Frankel, Anchorage, for appellee.

Before BOOCHEVER, Chief Justice, RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

## OPINION

BURKE, Justice.

This controversy centers on whether one member of a hunting duo is vicariously liable for the negligent acts of his co-hunter.

Defendants Moore and Czuba entered Alaska for the purpose of hunting game in late August of 1970. They came in Moore's truck with no explicit agreement with respect to the division of expenses; rather, the division of expenses took place in an informal fashion. The purpose of the hunt was for trophies with the gathering of meat a secondary consideration. Moore and Czuba proceeded under an unwritten "gentlemen's agreement" that each hunter was entitled to keep for himself any game he mortally shot.

On September 29, 1970, Moore and Czuba were hunting for moose on a road near the Denali Highway in the Cantwell area. They spotted a moose off the right-hand side of the road and stopped their vehicle. Moore got out of the truck and moved across the road from the animal. The moose then crossed the road to the left and same side as Moore. Moore shot and hit the moose. The wounded moose subsequently disappeared into the brush. After firing, Moore was unsure as to whether he had delivered a fatal shot. Consequently, Moore and Czuba decided to wait and allow the moose to "stiffen up." This strategy was unsuccessful as the moose did not "stiffen up" but rather made its way further into the woods for a distance of approximately one mile. The defendants attempted to track the wounded animal with Czuba following the tracks and Moore circling around to outflank it. Moore was successful and proceeded to fire additional shots, killing the moose. Czuba, at that point, still several hundred yards from

Moore, shot at a movement in the brush which he perceived to be the moose. Unfortunately, Czuba's shot struck the plaintiff-appellant, Gregory Nicholas, causing severe injuries.

The fact that Czuba was negligent is not controverted. Rather, the essence of this dispute is whether liability vicariously extends to Moore.

The case was tried to the superior court with Judge Victor D. Carlson presiding on March 4 and 5, 1976. In a Memorandum of Decision handed down on April 20, 1976, Judge Carlson rejected Nicholas' contentions that Moore should be held liable under agency and joint venture theories. This appeal followed.

 In the first of his major contentions [1] Nicholas urges that a master-servant relationship existed between Moore and Czuba sufficient to trigger vicarious liability to Moore. An essential element of the master-servant relationship is a consensual arrangement between principal and agent in which the agent may act on the principal's behalf. *Bruton v. Automatic Welding and Supply Corp.*, 513 P.2d 1122, 1126 (Alaska 1973). The lower court recognized that one may become an agent by voluntarily performing a gratuitous service for another. *Heims v. Hanke*, 5 Wis.2d 465, 93 N.W.2d 455, 458 (1958); *Jackson v. Capello*, 201 Pa.Super. 91, 191 A.2d 903, 906 (1963). However, Judge Carlson ruled that the mere fact that at some point during a hunt one hunter becomes entitled to an animal does not make all the other hunters his agents. He found dispositive the fact that consent to any agency could not arise until Czuba began performing a service for Moore or acting on his behalf and that tracking the moose under the circumstances was insufficient.

 Nicholas urges, however, that the circumstances were such as to manifest an intent by Moore that Czuba act in his behalf in tracking the moose and that Nicholas' injury stemmed from this implicit authorization. In support of this contention Nicholas cites comment (b) to section 15 of the Restatement of Law 2d, Agency which states in pertinent part:

> As in the case of contractual relations, the manifestation of the principal may be such that it is not necessary for the acceptance to be communicated to him. Thus, if the principal requests another to act for him with respect to a matter, and indicates that the other is to act without further communication and the other consents so to act, the relation of principal and agent exists. If, under such circumstances, the other does the requested act, it is inferred that he acts as agent unless he manifests that he does not so intend or unless the circumstances so indicate. *This inference is strengthened if, being requested to act in the matter, the other does something which he could properly do only as an authorized agent.* (emphasis added).

Even if such an inference is suggested by the facts of the case at bar, the superior court correctly held that to function as an authorized agent the principal has to exercise the additional element of control or have the right to control.

The Restatement of Law 2d, Agency states in section 14 that a "principal has the right to control the conduct of the agent with respect to matters entrusted to him." This position was essentially adopted by the California Supreme Court in *Flores v. Brown*, 39 Cal.2d 622, 248 P.2d 922, 925 (1952), wherein the court stated:

> The primary test for determining whether a person performing gratuitous services for another does so as the latter's agent is the same as that applied to determine whether one performing services for compensation does so as an employee

---

1. Nicholas urges in his brief that Moore's firing of his gun along the highway was a violation of 5 AAC 81.120(1) and was therefore negligence per se. Since this position is only cursorily argued, we do not consider it. It has been the consistent view of this court that failure to argue a point constitutes abandonment of it. *See Lewis v. State*, 469 P.2d 689, 691–92 n. 2 (Alaska 1970); *Nordin Const. Co. v. Whitney Bros. Plumbing & Heat, Inc.*, 441 P.2d 122, 123 (Alaska 1968).

or as an independent contractor, and in both situations the determinative issue is whether or not the alleged principal controlled or had the legal right to control the activities of the alleged agent.

*Accord, Johnson v. Peterson*, 38 Cal.App.3d 619, 113 Cal.Rptr. 445, 446 (1974); and *Travelers Indemnity Co. v. Royal Indemnity Co.*, 275 Cal.App.2d 554, 80 Cal.Rptr. 197, 202 (1969). Section 220(1) of the Restatement of Law 2d, Agency adds to this point by defining a servant as

> a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's *control or right to control.* (emphasis added).

In comment (h) to the Restatement subsection 220(2), certain factors are listed which indicate the existence of a master-servant relationship. Three of those factors are pertinent to the question of control: the understanding of the community that persons doing such work are servants, the supplying of tools by the employer, and the belief of the parties that a master-servant relationship exists.

With respect to the first factor, it should be noted that comment (i) to the above subsection stresses that the "custom of the community as to the control ordinarily exercised in a particular occupation is of importance" in determining the existence of an agency relationship. In the case at bar Nicholas introduced no evidence that the community custom in hunting was to create a master-servant hierarchy of control once one member of the hunting party had fired and struck an animal. Second, as pointed out by Judge Carlson, Czuba owned his own gun and had complete control as to when and how to use it. Thus, Moore did not provide the instrument of injury. Finally, whether there was a belief between the parties as to whether they were engaged in a master-servant relationship, testimony at trial showed that the decision as to who was

to track the wounded moose and who was to attempt to outflank it was mutual. Moore did not feel that he was in a decision-making position *vis a vis* Czuba.

■ In sum, the issues of whether there was a consensual relationship between Moore and Czuba and whether Moore exercised control over Czuba are questions of fact. As this court has stated in *A & G Const. Co., Inc. v. Reid Brothers Logging Co., Inc.*, 547 P.2d 1207, 1220 (Alaska 1976), quoting Alaska Rule of Civil Procedure 52(a) in pertinent part:

> In all actions tried upon the facts without a jury . . . . [f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

Moreover, this court will reject a trial court finding only

> when, although there may be evidence to support it, we are left with the definite and firm conviction on the entire record that a mistake has been committed. (citation omitted).

547 P.2d at 1220. After a thorough review of the record we are not convinced that the lower court erred in finding that there was no consensual undertaking between Moore and Czuba nor exercise of control sufficient to constitute a master-servant relationship and its correlative vicarious liability.[2]

■ As a second major contention Nicholas urges that a non-servant agency existed between Moore and Czuba under circumstances in which it was proper to impose vicarious liability on Moore. It is unnecessary to discuss whether such circumstances existed because the contention presupposes an agency relationship. Agency requires a consensual undertaking by the agent to act on behalf of the principal and for his benefit. Judge Carlson found that there was no such consensual undertaking and that finding is not clearly erroneous.

---

**2.** For an analysis of the doctrine of *respondeat superior* see our opinion in *Fruit v. Schreiner*, 502 P.2d 133, 138–41 (Alaska 1972).

In his final contention, Nicholas argues that the lower court erred in not finding that Moore and Czuba were engaged in a joint venture. Professor Williston has stated that among the requirements of a joint venture are the following:[3]

(a) A contribution by the parties of money, property, effort, knowledge, skill, or other asset to a common undertaking;

(b) A joint property interest in the subject matter of the venture;

(c) A right of mutual control or management of the enterprise;

(d) Expectation of profit, or the presence of 'adventure,' as it is sometimes called;

(e) A right to participate in the profits;

(f) Most usually, limitation of the objective to a single undertaking or ad hoc enterprise. (footnotes omitted).

In finding that a joint venture was not present, Judge Carlson held that points (b) and (c) were lacking in the case at bar. He stated:

Two of the above factors are missing from the understanding which Moore and Czuba had concerning the hunting trip. First, they did not have a joint property interest in the meat and trophies which were the subject matter of their trip. It was understood from the beginning that each was entitled to keep the game which he shot and killed. Second, there was no right of mutual control or management of the hunt. Each hunter had a voice in the decisions concerning where and when to hunt. However, neither had any control over the conduct of the other during a particular hunt, particularly with regard to the care and caution used in aiming and shooting at animals.[4]

After reviewing the record this court finds itself in agreement with this statement and consequently we hold that the lower court did not err in ruling that Moore and Czuba were not engaged in a joint venture. *See also Edlebeck v. Hooten,* 20 Wis.2d 83, 121 N.W.2d 240 (Wis.1963).

AFFIRMED.

---

**3.** 2 Williston On Contracts, § 318A at 563–64 (3d ed. W. Jaeger 1959).

**4.** Record on Appeal 182–83.