**James C. FOSTER, Appellant,**

v.

**Robert W. CROSS and Arlene R. Cross, Appellees.**

**No. 6081.**

Supreme Court of Alaska.

Sept. 17, 1982.

Thomas Waldock, Farleigh & Waldock, Anchorage, for appellant.

James N. Reeves, Bogle & Gates, Anchorage, for appellees.

Before BURKE, C.J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

Appellant in this action seeks specific performance of a purchase agreement against the owners of an 80 acre tract of land in southeastern Anchorage. The trial court found for the owners on the grounds that the realtor involved was the buyers' agent, that he made misrepresentations as to the buyers' development expertise and financial condition, and that those misrepresentations made the purchase agreement voidable at will. We affirm.

### FACTS AND PROCEEDINGS

In the fall of 1977, Michael Stephens, sole proprietor of Stephens Construction, asked Warren Sanders, a local real estate broker, to find a large piece of land in the foothills which would be suitable for development into a single family residential project. Sanders researched the municipal tax records and located several such parcels. One of the tracts was the remaining 80 acres of a homestead staked and owned by Robert

and Arlene Cross. Sanders contacted and met Robert Cross in February of 1978. Sanders stated that he was looking for land for a developer. Stephens' name was not initially mentioned, but was revealed shortly thereafter. Although asked to sign a listing agreement with Sanders at the time, Cross refused. Negotiations ensued, but proved fruitless.

In September of 1978, Sanders contacted Cross again and presented an offer from Stephens. Cross rejected this and two subsequent offers. The third offer also listed Robert Milby, a local contractor, as co-purchaser.

Cross then wrote up terms acceptable to him which he sent to Sanders. The terms were for 40 acres with the possibility of an option for the remaining 40. After discussions with Stephens and Milby, Sanders typed up Cross' proposal on a preprinted form agreement. One of the standard clauses stated that the broker was the sellers' agent.

Since the principals had not met at this point, all negotiations and information passed through Sanders. At some point during these negotiations, Cross had expressed some concern to Sanders about the finances of the buyers. Sanders made several representations as to the financial strength and development experience of both Stephens and Milby. Their accuracy is disputed. At the time that the purchase agreement was finally signed, on November 29, 1978, Cross also asked for financial statements for Stephens and Milby, but did not receive them.

The purchase agreement provided for a 90 day period until closing. A number of developments occurred during this period. In early December, Milby approached appellant James Foster, a painting contractor with whom he had done some business, and discussed the assignment of his interest in the contract. The assignment occurred on December 10. Cross was not informed of the assignment until February or March of 1979. Difficulties also arose as to the time frame and procedure for retracting and platting. Cross continued to insist on financial statements, which were still not forthcoming. Stephens' financial position also deteriorated, leading to his bankruptcy filing in early March. On February 22, however, he had assigned his interest in the sales agreement to his landlady, Sharon Dale.

The financial statements of Stephens and Foster were eventually delivered shortly before the scheduled closing. After reviewing them, Cross refused to proceed with the closing. Foster and Dale subsequently tendered performance in the names of Stephens, Milby, "and certain other individuals who are associated with them." The tender was refused. In July 1979, Dale assigned her interest to Foster, who subsequently filed for specific performance. Although numerous issues were raised at trial, the court found for the Crosses, stating that Sanders was the buyers' agent and that his misrepresentations as to Stephens' and Milby's development experience and financial position rendered the contract voidable. This appeal followed.

## I. AGENCY

As a matter of basic agency law, if Sanders made actionable misrepresentations while acting within the scope of an authorized agency for Stephens and Milby, the misrepresentations are attributable to them. Restatement (Second) of Agency § 162 (1958). Foster is subject to the same defenses because he is an assignee. W. Jaeger, 3 Williston on Contracts § 432 at 177–80 (3rd ed. 1960).

While the questions of what constitutes agency, and whether evidence is competent to show it are questions of law, the evaluation of the evidence and the decision on whether an agency relationship exists is for the factfinder. *Hinton v. S.S. Kresge Co.,* 3 Kan.App.2d 29, 592 P.2d 471, 476 (1978). *See Nicholas v. Moore,* 570 P.2d 174, 177 (Alaska 1977). It is not the law but the facts which are disputed here. The trial court found as a fact that Sanders was the agent of Stephens and Milby. Its finding will not be overruled unless it is clearly

erroneous. Alaska R. Civ. P. 52(a); *Nicholas v. Moore,* 570 P.2d at 177; *A & G Construction Co., Inc. v. Reid Brothers Logging Co., Inc.,* 547 P.2d 1207, 1220 (Alaska 1976). Given the evidence of authorization and control by the buyers and consent to the relationship on both sides, the finding is not clearly erroneous. Restatement (Second) of Agency § 1 (1958).[1]

Foster argues, however, that the Crosses are bound by the purchase agreement, which contains a standard printed clause stating that the broker is the agent of the seller. The existence of the clause does not change our conclusion. The Restatement of Contracts provides that "[a] recital of fact in an integrated agreement may be shown to be untrue." Restatement (Second) of Contracts § 218(1) (1981). Comment b states:

> A recital of fact in an integrated agreement is evidence of the fact, and its weight depends on the circumstances. Contrary facts may be proved. The result may be that the integrated agreement is not binding. . . .

While there was no explicit finding on the effect of the factual clause here, it is implicit in the trial court's findings that it did not think that the existence of the clause outweighed the other evidence. We will not disturb that implicit finding.[2]

## II. MISREPRESENTATION

■ In order to void the purchase agreement, the Crosses must show that Stephens and Milby, or their agent, Sanders, made a false representation of a material fact which was actually and justifiably relied upon. *Cousineau v. Walker,* 613 P.2d 608, 612 (Alaska 1980); *Halpert v. Rosenthal,* 107 R.I. 406, 267 A.2d 730, 733 (1970); Restatement (Second) of Contracts § 164(1) (1981).[3] Only one such misrepresentation need be shown as to either Stephens or Milby.

### A. *False Representations*

■ Sanders made a number of representations in response to Cross' queries. As to Stephens, the trial court found misrepresentations of his financial condition and his development expertise. Sanders told Cross that Stephens had had financial problems, but had resolved them. Foster concedes that these representations were false, but contends that they were innocent and therefore nonactionable. In *Cousineau v. Walker,* 613 P.2d 608, 611 n. 3 (Alaska 1980), this court held that a material misrepresentation, whether innocent, negligent or fraudulent, was an adequate ground for rescission. We find no error in the court's conclusion regarding the misrepresentation of Stephens' financial condition.

As to the misrepresentation of Stephens' development expertise, Cross testified that Stephens was "built up as being an important subdivider" and "the owner of Silvercrest Subdivision and Homestead Hills." Stephens' own testimony revealed his lack of development expertise. Stephens was basically a contractor. He had little sense of the retracting and platting process, or of the engineering work and time frame involved. He owned only part of Silvercrest, while the half interest that he claimed in Homestead Hills was disputed altogether. There was adequate evidence to conclude

1. Even if the agency involved here were a dual one, we note that the fact that a broker in a real estate transaction is the agent for both parties is no bar to holding one party responsible for misrepresentations made to induce the other party to enter into the sale. *Jennings v. Lee,* 105 Ariz. 167, 461 P.2d 161, 165 (1969) (en banc); *Miller v. Wood,* 188 Cal.App.2d 711, 10 Cal.Rptr. 770, 772 (1961).

2. We do not decide the effectiveness of other factual clauses, such as those which state that no representations or warranties have been made. The effect of such clauses will depend on the circumstances of the case. *Commercial Metals Co. v. United States,* 176 Ct.Cl. 343, 351 (1966); *Lingsch v. Savage,* 213 Cal.App.2d 729, 29 Cal.Rptr. 201 (1963); *Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959); J. Calamari and J. Perillo, Contracts, § 9–21 (2nd ed. 1977).

3. Similarly, although in *Cousineau,* it was the buyers who sought to rescind on the basis of the misrepresentations, the seller has a similar right. Restatement (Second) of Contracts § 164(1) (1981); Restatement (Second) of Torts § 552C(1) (1977).

that he was not "an important subdivider" in the sense that Cross might reasonably have understood the term, and that he lacked the represented development expertise.

As to Robert Milby, the trial court found that Sanders represented that Milby was "a substantial builder with considerable development experience in the Anchorage area," and that that representation was false. That finding is not clearly erroneous.

Cross testified that Milby was identified as an "important" and "well-known" builder. In fact, Milby was a small contractor. For instance, in 1978, he built five houses in conjunction with one partner. There was testimony at the trial that some Anchorage subdividers, on the other hand, developed and built on properties of a hundred or more lots. Moreover, there was no evidence that Milby had had any prior experience with the actual planning, finances, or development of a subdivision. The trial court could properly conclude that Milby was not "important" or "well-known" in the sense that Cross might reasonably have understood the term and lacked the represented development experience.

All of the findings as to the existence of misrepresentations must stand.

### B. *Materiality*

"A material fact is one 'to which a reasonable man might be expected to attach importance in making his choice of action.'" *Cousineau v. Walker,* 613 P.2d at 613, *quoting* W. Prosser, Law of Torts § 108, at 719 (4th ed. 1971). A reasonable man might well consider Stephens' and Milby's development experience and financial status of importance. The down payment here was only about 7% of the purchase price, and Cross was dependent upon the success of the development for payment of the remaining sum. While the Crosses were protected by a deed of trust, extensive work on improvements such as land clearing, roads, electrical lines, and sewers could result in liens that would have priority over the deed of trust. AS 34.35.060(c). In the event of financial failure of the project, a substantial portion of the market value of the property might be consumed by prior mechanics' liens, leaving the Crosses with little or nothing.

Foster argues in response that a printed clause in the contract permitting assignment makes representations concerning the solvency or building expertise of Milby, Stephens, or anyone else immaterial. The argument is basically that if the buyers could assign to someone without development expertise or strong finances, it doesn't matter whether Cross was misled about the buyers or not.

Foster correctly asserts that under the contract, Stephens and Milby could have assigned their interests to anyone, regardless of financial strength or development expertise. In fact, under a preprinted clause in the purchase agreement, the assignment could be made without notice to the Crosses. The Crosses' assurance that they would not lose by any assignment lay in the fact that the assignor remains liable on the contract to the one to whom performance was to be rendered. *Dondlinger & Sons' Construction Co., Inc. v. Emcco, Inc.,* 227 Kan. 301, 606 P.2d 1026, 1029 (1980); *Smith v. Wrehe,* 199 Neb. 753, 261 N.W.2d 620, 625 (1978); *Boswell v. Lyon,* 401 N.E.2d 735 (Ind. Ct. App. 1980). In order to escape such liability, it is in the assignor's interest to choose a capable assignee and to offer both financial and technical assistance if necessary to successful performance. The seller loses nothing by the assignment, since its effect is simply to commit another party's resources to the performance of the contract. The seller still has recourse to the assignor in the event of non-performance.

Where, as here, the assignors' resources are not what they were represented to be, that recourse and the assurance that it provides to the seller may be of little value. The characteristics of the assignee then became critical. Should the assignee be what the assignor was represented to be, here, a financially strong builder with development expertise, the misrepresentation is cured.

Restatement (Second) of Contracts § 165 (1981). *See Mitchell-Huntley Cotton Co., Inc. v. Waldrep,* 377 F.Supp. 1215, 1220–21 (N.D. Ala. 1974). The seller contracted for performance by a party with those traits, and through the assignment, would be dealing with one. The misrepresentations would become immaterial. If, on the other hand, the assignee did not possess the misrepresented qualities, the shortfall between what the seller expected and what he got would still exist. In that case, the misrepresentations would remain material.

Here, in fact, Foster asserts in the alternative, that even if the misrepresentations were material, they *were* cured by the assignment to Foster and Dale. The financial qualifications of Foster and Dale, at least, are not disputed. However, there is no evidence in the record that Sharon Dale had any business or development experience whatsoever to lend to the project. James Foster was a painting contractor at the time of the assignment. While his business experience may have been adequate to the occasion, there is no evidence in the record to show that he had any development or building experience. Since neither assignee possessed the development expertise important to the successful completion of the project, we hold that the assignment did not cure the material misrepresentations.

### C. *Actual and Justifiable Reliance.*

Foster does not argue on appeal that there was no actual reliance. Rather, he argues that the reliance was not justifiable, that Cross was put on notice as to the possible falsity of the misrepresentations, and that he had a duty to investigate further. *Cousineau v. Walker,* states the applicable standard for justifiable reliance in a land sale case.

A buyer of land, relying on an innocent misrepresentation, is barred from recovery only if the buyer's acts in failing to discover defects were wholly irrational, preposterous, or in bad faith.

613 P.2d at 616. That standard is also applicable to a seller. While Cross' behavior may not have been that of a prudent man, it was not wholly irrational, preposterous, or in bad faith under the circumstances of this case.

An actionable misrepresentation having been found, the purchase agreement was voidable at the will of the Crosses. Accordingly, the judgment of the trial court is

AFFIRMED.