Ken HINCHEY, Appellant,

v.

Vida HINCHEY, Appellee.

No. S–833.

Supreme Court of Alaska.

Aug. 1, 1986.

Hal P. Gazaway, Anchorage, for appellant.

Joseph P. Palmier, Palmier & Stohr, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

RABINOWITZ, Chief Justice.

## OPINION

This appeal concerns the management of a court imposed trust upon the receivables of appellant Ken Hinchey, an obligor-spouse, to secure child support payments for his son Clark Hinchey and alimony payments for his ex-wife Vida Hinchey under a divorce decree. Ken appeals from an order of the superior court which denied his motion to terminate the trust and allocated portions of the trust fund for specific purposes.

## FACTS.

The superior court entered judgment in the Hincheys' divorce action in 1977. We affirmed the judgment in its entirety in *Hinchey v. Hinchey*, 625 P.2d 297 (Alaska 1981) ("*Hinchey I*").[1] At the time the judgment was originally entered, the superior court imposed a trust on all funds to be received by Ken in order to secure the support that the court had ordered.

Joseph Palmier, the court appointed trustee and Vida's attorney, filed annual accounts with the superior court and with Ken's counsel. The primary asset collected by the trustee during the seven-year period in question was a contract receivable from Alaska General Company from the sale of Ken's stock in Alaska Aggregate Company. The final payments under this stock sale were received by the trustee in 1984.

Believing that no further collections or receipts were to be received, with the possible exception of tax refunds, the trustee recommended in his "final accounting" of December 13, 1984 that the trust be terminated. Future entitlements due Vida, as well as child support and educational obligations on behalf of Clark, would be reduced to present value and disbursed pursuant to the trustee's recommendation. The trustee further recommended that the

---

1. *Hinchey* was partially overruled by *Dowling v. Dowling*, 679 P.2d 480, 483 (Alaska 1984) (there is no legal right to post-majority educational support under Alaska statutes).

remainder of the trust be allocated to meet Ken's federal tax liabilities.[2]

On December 12, 1984, Ken moved to terminate the trust over his income and to terminate the maintenance payments to Vida. He argued that this was preferable to either (1) continuing the trust or (2) setting aside a lump sum for Vida, a lump sum for Clark, and disbursing the remainder to himself.

Ken contended that the court should terminate the trust because he no longer had any income other than his social security payments while Vida had received 91% of the marital estate. Ken asked that the court relieve him of any further obligation to provide maintenance for Vida.

The superior court denied Ken's motion to terminate support and to terminate the trust. In the same order the superior court acted upon the trustee's final accounting. The trustee was ordered to pay all costs for the administration of the fund, litigation costs, and federal taxes as they became due. These expenses were all part of Ken's request. The only expense the superior court declined to order paid was a judgment against Ken in the case of *Lo-Pro Ventures v. Hinchey*, No. 3AN–81–1998 Civil. The trustee was further ordered to set aside sums representing payments due the beneficiaries, with the surplus to be used to meet Ken's federal tax indebtedness.

KEN'S MOTION TO TERMINATE THE TRUST AND TO TERMINATE SUPPORT PAYMENTS.

The applicable standard of review is whether or not the superior court abused its discretion in denying Ken's motion. We will hold that an abuse of discretion occurred only where "we are left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling." *Jones v. Jones,* 666 P.2d 1031, 1035 (Alaska 1983), *quoting Lovell v. Lovell,* 645 P.2d 151, 152 (Alaska 1982). Our review of the record persuades us that it was not an abuse of discretion for the superior court to deny Ken's motion to terminate the trust and support payments.

Under AS 25.24.170,[3] alimony payments may be set aside, altered, or modified any time after judgment. A material and substantial change in circumstances is generally required in order to modify a provision of a decree calling for spousal or child support. *Larson v. Larson,* 661 P.2d 626, 628 (Alaska 1983) (spousal support); *Curley v. Curley,* 588 P.2d 289, 291 (Alaska 1979) (child support). The movant must demonstrate by a preponderance of evidence that there has been such a change in circumstances. *Curley,* 588 P.2d at 292 n.9.

Ken argues that failure to realize the reasonable expectations upon which a court bases a divorce decree may constitute a change in circumstances, justifying a modification or termination of the alimony award.[4] He further contends that the superior court at the time it issued the divorce decree reasonably expected him to continue to generate substantial income. Ken claims that he now has no remaining assets or income from the marital estate, and therefore has shown substantial change in circumstances which warranted the granting of his motion.

As a general rule, a substantial reduction in or cessation of a spouse's income is a

2. Adoption of the trustee's recommendations would exhaust the corpus of the trust.

3. AS 25.24.170 provides:
[A]ny time after judgment the court, upon the motion of either party, may set aside, alter, or modify so much of the judgment as may provide for alimony, for the appointment of trustees for the care and custody of the minor children or for their nurture and education, or for the maintenance of either party to the action.

4. Ken also argues that reconsideration of the *Merrill v. Merrill,* 368 P.2d 546, 547 n.4 (Alaska 1962), factors "in light of the current circumstances of this case show the injustice of the Superior Court's Order ...." Ken has not shown plausible, substantial changes with respect to the *Merrill* factors or changes that the superior court did not anticipate, e.g. that the parties would age.

factor that may justify or require a reduction in alimony or maintenance. Annot., 18 A.L.R.2d 10, 30 (1951 & later case service 1973 & supp. 1986); *see also* H. Clark, The Law of Domestic Relations in the United States § 14.9, at 460 (1968). In *Curley* we held that the financial abilities of the parties should be considered in deciding whether changed circumstances exist. We stated:

> In determining whether a change in circumstances justifies a reduction in one parent's child support obligation, a number of factors must be taken into account. The court must consider both the needs of the child or children supported *as well as the needs and financial abilities of both parents .... [T]he trial court must examine the financial situation of both parents and determine whether the equities justify placing a greater burden on one and a correspondingly lesser burden on the other.*

*Id.* at 292 (footnote omitted; emphasis added).

■ Although *Curley* involved a reduction in child support, AS 25.24.170 makes no distinction between child and spousal support decrees. We have made a distinction in other cases between modification of a child support decree and modification of a spousal support decree, but that distinction was made in the context of a mistaken assumption in fashioning the original decree.[5] This case involves an alleged change in external facts, not a mistaken assumption. We hold that an unanticipated permanent change in the financial abilities of the parties may be an adequate basis for finding a material and substantial change of circumstances sufficient to warrant modification of a spousal support decree.

■ The superior court did not err in denying modification in this case, however, because Ken did not demonstrate a significant change in external facts. Ken's income, as measured by funds received by the trust, rather than by disbursements to him from the trust, is essentially the same as the original divorce decree anticipated. In *Hinchey I*, it was estimated that Ken's after-tax income would average $153,990 per year from 1978 to 1984. *See* 625 P.2d at 308. In actuality, Ken had an average pre-tax income of at least $299,174 per year during the seven-year period. Assuming a tax rate of 50%, these figures are very close.

■ We also think the superior court's decision not to terminate the trust was well founded and thus was not an abuse of discretion. The trust was initially imposed when the superior court found that Ken had signed a confession allowing a judgment to be executed against his funds without disclosing this to the court.[6] The superior court was concerned that support of Clark would be threatened if the trust were dissolved. We conclude that on this record adequate grounds exist for the superior court's decision to continue the trust.

## ALLOCATION OF TRUST FUNDS.

In its order of December 19, 1984, the superior court followed the trustee's recommendations and provided that Vida be allocated $174,162.05, the present value of her "remaining property rights." Also, the court provided that the trustee "reserve"

---

5. In *Headlough v. Headlough,* 639 P.2d 1010, 1012–13 (Alaska 1982), we held that a mistake in the amount needed to support minor children could warrant modification of a child support order under the material and substantial change of circumstances doctrine. In *Larson,* 661 P.2d at 628, n.2, however, we declined to extend this rule to spousal support. We held that in spousal support cases, the change in circumstances doctrine relates only to changes in external facts, not to mistaken assumptions. *Id.* The reason for this distinction is that in child support cases the court's paramount concern is the best interests of the child, and in spousal support cases finality of judgment is relatively more important. *Id.*

6. A similar compromise judgment remains outstanding against Ken in the *Lo-Pro Ventures* case.

for Clark $70,098.80, the present value of the child support due him. The trustee was also ordered to pay "in his discretion and to the extent possible" Ken's tax indebtedness for 1984.[7]

Ken has raised numerous specifications of error relating to these provisions of the December 19, 1984, order. First, he contends that there was no admissible evidence to support the present value determinations. Second, he argues that he is not obligated to pay Clark's educational expenses.[8] Finally, he argues that the superior court erred in ordering that the funds held for Vida have a higher priority than Ken's 1984 income tax obligations.

The superior court accepted the trustee's calculations in reaching its present value determinations. Review of the record discloses that the sources used to compute the discount rates are specifically referenced.[9] However, even if the superior court erred in its calculations, any error in this regard is harmless at this point. Since no funds have actually been disbursed from the trust, as it has not been terminated, the allocations ordered serve merely as a guide to ascertainment of the size of the trust's surplus,[10] which would be used to meet Ken's federal tax obligations.

■ The superior court did, however, include in its calculation of money to be allocated for Clark the present value of his educational expenses. Ken is not obligated to pay Clark's educational expenses. In the April 14, 1977 Findings of Fact and Conclusions of Law, the superior court expressly noted that in awarding the child support payments the child's educational needs were considered. Although Vida claims that the trustee's accountings reflect that these expenses were paid throughout the period without objection, specific reference to Clark's educational expenses is made only for the last two accounting periods. In our view, Clark's educational payments were included in the original award for child support. An increase in this award would be improper at this time. Moreover, Alaska law does not obligate payment of post-majority educational support. *Dowling*, 679 P.2d at 483. The error, though, is again harmless, merely affecting the theoretical allocation of the funds prior to taxes.

■ The superior court also erred to the extent that it ordered the funds allotted Vida to have priority over Ken's federal tax obligations. In its original decision, the superior court concluded that while Ken was liable for all federal and state income taxes, Vida only had first priority in trust funds *after* tax liens. In the December 19, 1984 order, the superior court reiterated that Vida had first priority after tax liens; nevertheless, it provided that the trustee could pay "in his discretion ... the indebtedness that is due and/or to become due to the Internal Revenue Service for 1984 tax-

7. The court further ordered that any I.R.S. refunds received by or on behalf of Ken should be paid to the trustee for the benefit of the trust.

8. Ken argues that the original decree took into account educational expenses when calculating the child support payments and therefore additional sums should not be allocated.

9. Ken argues that no evidence was presented concerning Vida's current physical condition and that mortality tables were insufficient evidence on which to calculate life expectancy in order to determine present value. The superior court may take judicial notice of standard mortality tables, which should not be disregarded absent evidence to the contrary. *See Levar v. Elkins*, 604 P.2d 602, 604 (Alaska 1980); *Morri-*

*son v. State*, 516 P.2d 402, 406 (Alaska 1973). The superior court may also take judicial notice of interest rates.

10. The original divorce decree awarded Vida support payments, until death or remarriage, of $2,500 per month until age 60 and $1,000 per month thereafter. The superior court found that these payments constituted a property right.

Ken argues that the superior court abused its discretion by "reclassifying" these support payments as property rights. To the extent that this may be error, it is harmless at this point. No funds were ordered removed from the trust. Vida and Clark continue to receive payments from the trust in accordance with the original divorce decree.

es." Despite this language, it is clear that the superior court's original intention was to accord priority to Ken's federal tax obligations. The trustee should not have been granted any discretion in the matter of payment of these obligations. This portion of the superior court's order, however, has not yet injured Ken and may not, if properly interpreted by the trustee.

AFFIRMED and REMANDED for modification consistent with this opinion.