Betty L. MANES, Appellant,

v.

Richard COATS; Peggy Coats, d/b/a Always Inn; One Call Does It All, a Partnership; and Betty Hutchison, Individually and d/b/a One Call Does It All; and Jeanette Bradshaw, Individually, and d/b/a One Call Does It All, Appellees.

No. S–7468.

Supreme Court of Alaska.

June 20, 1997.

Richard L. Harren, Wasilla, for Appellant.

Timothy E. Miller, Law Offices of Timothy E. Miller, Anchorage, for Appellees Bradshaw and Hutchison.

No appearance by Appellees Richard Coats or Peggy Coats.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

COMPTON, Chief Justice.

### I. INTRODUCTION

Betty Manes appeals from a judgment of the superior court granting her partial recovery for injuries she sustained in a fall down a stairwell. We affirm in part, reverse in part, and remand for further proceedings.

### II. FACTS AND PROCEEDINGS

In June 1991 Manes planned a visit to Valdez, Alaska. She contacted "One Call Does It All" (One Call), a reservation/referral service operated by Betty Hutchison and Jeanette Bradshaw, to arrange for bed and breakfast accommodations. Manes claims she requested a facility without stairs, because a heart condition rendered her unable to cope with stairs. Manes also requested a facility which allowed smoking. Hutchison denied that Manes requested a facility without stairs, stating that there were no bed and breakfast establishments in Valdez without stairs. Manes testified that if she had known that no facility without stairs was available, she would not have gone to Valdez.

One Call reserved a room for Manes at the Always Inn, which was owned by Richard Coats and Peggy Coats. The Always Inn was one of the few bed and breakfast establishments in Valdez which allowed smoking, but the room which One Call reserved was accessible only by stairs. These stairs lacked handrails and an adequate landing area, and therefore fell below building code standards. However, prior to referring clients to the Always Inn, Hutchison and Bradshaw visited it and, from their perspective, found nothing that required changing.

Manes had no further contact with One Call. Instead, Manes received confirmation of her reservation directly from Peggy Coats. Coats also requested a deposit for the room, which Manes provided.

In August Manes arrived at the Always Inn. Upon knocking, Manes was told to come in. Once inside, Manes, who was wearing light-adjusting sunglasses that remained dark from the outdoor light, was unable to see well. Nevertheless, she continued walking forward. She took one step, fell down the stairs, and fractured her wrist.

Manes sued the Coats for the injuries she sustained. She also sued Bradshaw and Hutchison for directing her to the Always Inn, and for failing to warn her of the "defective" stairwell.

The superior court granted partial summary judgment for Bradshaw and Hutchison, holding that they were not "special agents" of Manes, and that their "participation in booking a room was solely in the nature of a referral." The court also held that Bradshaw and Hutchison "did not assume responsibility for factors or risks of which [they] were] not aware" and that they had no duty to make themselves aware "of all conditions at accommodations to which [they] made referrals."

At the close of trial, after all parties had rested, the court observed that Manes had offered no evidence regarding life expectancy. In response, Manes attempted to reopen her case to present various tables of life expectancy. Manes also asked the court to

take judicial notice of life expectancy information contained in an Internal Revenue Service annuity taxation table. The court refused to reopen the case, or to take judicial notice of the table. In the absence of any evidence of Manes's life expectancy, the court granted a motion for a directed verdict barring future damages.

The jury awarded Manes past damages against the Coats, but held Manes seventy-five percent comparatively negligent and limited recovery accordingly. The jury did not hold Bradshaw and Hutchison liable. This appeal followed.

## III. DISCUSSION

### A. The Superior Court Properly Granted Summary Judgment on the Issue of One Call's Duty to Manes.

#### 1. Standard of review

Summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Estate of Arrowwood v. State*, 894 P.2d 642, 644 n. 2 (Alaska 1995). This court conducts *de novo* review of the question. *Beilgard v. State*, 896 P.2d 230, 233 (Alaska 1995). All factual inferences are drawn in favor of the non-moving party, and the existence of a genuine issue regarding any material fact precludes summary judgment. *Id.* at 233.

The grant of summary judgment removed from the jury consideration of Manes's claim that One Call had a duty to inform itself of all hidden "conditions" at the Always Inn. However, the jury did consider One Call's potential liability for referring Manes to a room with stairs when she requested otherwise, and for failure to disclose defects of which they were or should have been aware. Manes's challenge to the grant of summary judgment can prevail only if the facts show that an agency relationship existed between Manes and One Call, which included a duty on the part of One Call to inspect the Always Inn, and to discover hidden defects beyond those apparent to a reasonable person in One

Call's situation.[1] Since the facts, and reasonable inferences drawn from them, do not give rise to such a duty, Manes's challenge must fail.

#### 2. The issue of One Call's duty to Manes was properly subject to summary adjudication.

"While the questions of what constitutes agency and whether evidence is competent to show it are questions of law, the evaluation of the evidence and the decision on whether an agency relationship exists is for the factfinder." *Foster v. Cross*, 650 P.2d 406, 408 (Alaska 1982) (agency relationship existed under contract); *see also Sparks v. Republic Nat'l Life Ins.*, 132 Ariz. 529, 542, 647 P.2d 1127, 1140 (1982) ("While it is true that the question of whether an agency existed is one of fact, when the material facts from which the agency relationship could be inferred are not in dispute, the question of whether an agency relationship exists is a question of law.").

The facts which might give rise to an agency relationship are undisputed in this case. One Call advertised as a free reservation service. Manes contacted One Call with travel dates and requirements, and was told that One Call would find a place for her. Manes and One Call had no further contact. One Call reserved a room for Manes at the Always Inn. Several weeks later, Manes received a confirmation from the Always Inn, along with a request for a deposit, which Manes sent. On these undisputed facts, the issue properly is characterized as a dispute of the legal consequences of those facts. A court may rule on the existence and scope of an agency relationship which arises from undisputed facts. Thus, this issue was properly subject to summary adjudication.

#### 3. One Call's duty to Manes did not include a duty to inspect the Always Inn.

The Restatement (Second) of Agency provides that in order for an agency rela-

---

**1.** Manes also attempts to raise a claim based on innocent misrepresentation. However, Manes waived all such claims in the action below. As a result, Manes's innocent misrepresentation claim cannot be raised on appeal.

tionship to exist, the agent must have "a power to alter the legal relations between the principal and third persons." Restatement (Second) of Agency § 12 (1958). The principal, in turn, must have "the right to control the conduct of the agent with respect to matters entrusted to him." Restatement (Second) of Agency § 14; *see also Nicholas v. Moore*, 570 P.2d 174 (Alaska 1977) (for master and servant agency relationship to exist, principal must exercise control over the agent). If an agency relationship does exist, the "extent of the duties of the agent to the principal are determined by the terms of the agreement between the parties, interpreted in light of the circumstances under which it is made." Restatement (Second) of Agency § 376; *see also Szelenyi v. Morse, Payson & Noyes Ins.*, 594 A.2d 1092, 1094 (Me.1991) ("The agent's duties are based on the manifestations of consent of the parties and ordinarily must be inferred from the parties' conduct.").

■ Both Manes's control over One Call and One Call's power to act on Manes's behalf were essentially nonexistent. The only power One Call had to act on Manes's behalf was to make a reservation in her name. One Call and Manes had no contact beyond the initial phone call. Manes herself was required to submit a deposit to secure that reservation. All other financial matters remained Manes's responsibility. One Call received no payment from Manes for its services. Moreover, Manes exercised no control over One Call's actions beyond listing her requirements.

One Call never informed Manes that it either had inspected or would inspect any establishment to which it referred her, although Bradshaw in fact had examined the Always Inn to discover its general condition and the features available to its guests. As noted, the jury considered One Call's failure to disclose defects of which it should have been aware, which would include dangers which Bradshaw's examination should have revealed. The imposition of a greater duty would effectively render One Call an insurer of the safety of its patrons, and hold it responsible for all hidden conditions at any facility to which it made referrals. While Manes could reasonably rely on One Call not to refer her to a location it knew was obviously dangerous, Manes has presented no evidence which would entitle her to believe that One Call's free service included such a broad duty. Indeed, such a duty would be beyond the scope of the duties of a "travel agent"[2] and is not consistent with One Call's more limited role in accommodation referral.[3]

2. This court has not yet considered the precise duties of travel agents. Other jurisdictions are split regarding such duties. Several courts have expressly excluded a duty of inspection from the duties of a travel agent. *Maurer v. Cerkvenik-Anderson Travel, Inc.*, 181 Ariz. 294, 890 P.2d 69 (App.1994) (travel agents have no duty of investigation); *see also United Airlines, Inc. v. Lerner*, 87 Ill.App.3d 801, 43 Ill.Dec. 225, 410 N.E.2d 225 (1980) (denying any duty of investigation). Other courts have required travel agents to disclose all "reasonably obtainable" information. *McCollum v. Friendly Hills Travel Center*, 172 Cal.App.3d 83, 217 Cal.Rptr. 919, 924 (1985) ("It would seem absurd to hold that [a travel agent] had no duty to acquire any knowledge of the facilities it was booking." (citation omitted)); *see also Douglas v. Steele*, 816 P.2d 586, 589 (Okla. App.1991) (agent was liable for failing to discover host company's bankruptcy); *see also Rookard v. Mexicoach*, 680 F.2d 1257, 1263 (9th Cir.1982) (travel agents are not insurers of traveler safety, but do have a duty to warn of dangers of which they are or should be aware). The precise meaning of "reasonably obtainable information" is unclear. However, there is no indication that a duty to obtain such information requires agents

to investigate every establishment to which their clients travel. Indeed, such a duty would render travel agents "insurers" of traveler safety, which *Rookard* indicates they are not.

3. In all cases noted above, the "travel agents" were paid directly by their clients in exchange for their service as agents. By contrast, One Call received no payment from Manes, but was instead compensated at a flat monthly rate by the various establishments to which it made referrals. Indeed, Bradshaw apparently viewed her business as the marketing agent of these establishments rather than as the travel agent of guests. ("We just wanted to provide something that would pay for the advertising" for bed and breakfasts.). Moreover, One Call's accommodation referral service was far more limited in scope than the activities of travel agents as recognized in other jurisdictions. *Lerner*, 43 Ill.Dec. at 227, 410 N.E.2d at 227 (under Illinois law, "a travel agent is one who ... deals with carriers, plans an itinerary, arranges for hotel accommodations, guides and tours of each city and sets up the traveler's schedule." (citation omitted)). As a result, any duty which One Call owed Manes fell short of the duties of recognized travel agents in the noted cases.

**B.** *All of Manes's Challenges to Jury Instructions Lack Merit.*

**1.** *Standard of review*

Jury instructions to which a timely objection is made are subject to *de novo* review. *See Conam Alaska v. Bell Lavalin,* 842 P.2d 148, 153 n. 9 (Alaska 1992) (challenges to jury instructions present questions of law to which the court applies its independent judgment). However, "[n]o party may assign as error the giving or failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict." Alaska R. Civ. P. 51(a). In the absence of an objection, jury instructions are reviewed only for "plain error," which occurs if "a correct instruction would have likely altered the result." *Conam Alaska,* 842 P.2d at 153 (citations omitted).

**2.** *Instruction 27 was proper.*

Jury Instruction 27 provides that "Defendants Bradshaw and Hutchison are not the special agents of plaintiff...." Manes failed to object to this instruction. Moreover, the instruction was appropriate since it merely effectuates the court's grant of summary judgment on that issue. As a result, the use of this instruction did not constitute reversible error.

**3.** *Proposed Instructions 50 and 51 were correctly omitted.*

While Manes properly objected to the omission of Proposed Instructions 50 and 51,[4] her challenge to these omissions fails. Proposed Instruction 50 provides that "Bradshaw and Hutchinson [sic] are under a duty to exercise ordinary care in the inspection of the premises ... [and] failure to fulfill this duty ... would be negligence." The superior court correctly concluded that the grant of partial summary judgment negated the existence of a duty of inspection. An instruction which declared that the defendants were under such a duty was therefore improper, and the court did not err in rejecting that instruction. For its part, Proposed Instruction 51 contains no actual instructions for the jury. It neither outlines the findings the jury must make to accept Manes's claim nor sets forth any legal directives to the jury. Instead, it merely outlines Manes's argument that One Call voluntarily undertook a duty of inspection. Failure to include a summary of a party's arguments in the jury instructions does not constitute reversible error.

**4.** *The omission of Manes's proposed special verdict form did not constitute error.*

Manes argues that as a result of the court's refusal to use her proposed special verdict form,[5] the jury was precluded from finding that the conduct of two or more defendants was indistinguishable. This contention lacks merit.

A trier of fact is permitted to treat separate parties as indistinguishable only if "the separate act or omission of each person cannot be distinguished." AS 09.17.080(b). In this case, no duty was common to all defendants. Peggy Coats was liable as a property owner and as an innkeeper, while Richard Coats was liable only as a property owner. The conduct which exposed each of them to liability was not identical. While a jury could conclude that their conduct as landowners was indistinguishable, Richard could not be subject to liability as an innkeeper. Manes's form only allowed the jury to find that the conduct of two or more defendants was indistinguishable in its entirety, without regard for any distinction be-

---

**4.** "[C]ounsel should make a specific objection to a given instruction" in order to provide the trial court with "an identifiable opportunity to rule on a party's position." *Conam Alaska,* 842 P.2d at 153 (citation omitted). Following the trial judge's request for "objections or comments" regarding the instructions, Manes's counsel noted that Instructions 50 and 51 were "noticeably absent," and argued that their omission improperly restricted Manes's possible theories of recovery. These remarks indicate counsel's opposi-

tion to the omission, as well as the basis for that opposition. Since these statements were adequate to ensure that the court was clearly informed of the alleged error, counsel's somewhat oblique "objection" sufficed to preserve the issue for appeal.

**5.** As a type of jury instruction, a special verdict form is subject to the same standard of review as other jury instructions.

tween each party's responsibility. The court properly refused to use such a form.

■ Manes's claims regarding the indistinguishability of the One Call employees' conduct with each other or with the Coats defendants also fail. As noted, the jury absolved Bradshaw and Hutchison of liability. As a result, while their interests were coextensive, any error concerning the indistinguishability of their conduct from each other was harmless. Similarly, Manes cannot argue that the non-culpable conduct of One Call was indistinguishable from the culpable conduct of the Coats.

C. *The Superior Court's Refusal to Take Judicial Notice of the IRS Annuity Table, and Its Resulting Grant of a Directed Verdict Denying Future Damages, Was Erroneous.*

■ "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within this state or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Alaska R. Evid. 201(b). We have held that mortality tables are a proper subject for judicial notice. *Hinchey v. Hinchey*, 722 P.2d 949, 953 n. 9 (Alaska 1986) (trial court properly took judicial notice of mortality table). Manes's request that the court take judicial notice of the IRS table was timely,[6] and should have been granted.

■ The superior court's later grant of a directed verdict rested in large part on the absence of life expectancy information, from which the jury could have calculated the period for which future damages were appropriate. Absent the superior court's error, the jury would have had access to that information. Since Manes's damages were impermissibly restricted by the directed verdict,

the court's refusal to take judicial notice of the table constituted reversible error.[7] We therefore remand the case for consideration of future damages in light of our holding in *Hinchey*.[8]

## IV. CONCLUSION

The existence of an agency relationship between Manes and One Call, arising from undisputed facts, is a matter of law to be determined *de novo* by this court. The superior court's resolution of this issue was correct. None of Manes's challenges to the jury instructions have merit. However, the superior court's failure to take judicial notice of a mortality table was error, as was its resulting grant of a directed verdict barring future damages. Accordingly, the decision of the superior court is AFFIRMED with respect to the grant of summary judgment and the challenged jury instructions. The superior court's grant of a directed verdict is REVERSED, and the case is REMANDED for a determination of future damages for which the Coats may be liable.

---

6. "Judicial notice may be taken at any stage of the proceeding." Alaska R. Evid. 203(b).

7. In any event, we note that a life expectancy table is not an indispensable element to a claim for future damages.

8. On remand, the court should follow *Hinchey* in regard to calculation of future economic damages as well as non-economic damages. *See*

*Hinchey*, 722 P.2d at 953 n. 9 (interest rates are a proper subject for judicial notice). We note as well that future damages may be reduced to present value under AS 09.17.040(b) without the testimony of an expert economist. Accordingly, Manes is not required to present an expert economist in order to recover future economic damages.