Donna Mae FREITAS and Daniel
Freitas, husband and wife,
Appellants,

v.

ALASKA RADIOLOGY ASSOCIATES,
INC., and Janice M. Anderson,
M.D., Appellees.

No. S–10487.

Supreme Court of Alaska.

Nov. 14, 2003.

Rehearing Denied Dec. 10, 2003.

P.3d 269, 280 (Alaska 2001) (arguments raised for the first time on appeal are waived).

Robert C. Erwin and Roberta C. Erwin, Erwin & Erwin, LLC, Anchorage, for Appellants.

Matthew K. Peterson and Jason A. Weiner, Clapp, Peterson & Stowers, LLC, Anchorage, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Donna and Daniel Freitas sued Alaska Radiology Associates, Inc. and Dr. Janice M. Anderson, alleging that they committed medical malpractice in 1996 by failing to detect cancerous lesions depicted on Donna Freitas's mammograms. The jury found for the defendants. The Freitases argue that it was error to permit Dr. Denise Farleigh to testify about the practice Alaska Radiology followed in positioning patients during mammograms and the training its mammogram technologists received; they reason that this was opinion evidence that should have been dis-closed before trial and that it unfairly raised new topics. But under the circumstances presented here, we conclude that the trial court did not abuse its discretion in admitting this testimony. The Freitases also argue that Jury Instruction No. 18 misled the jury. Because they did not raise this objection at trial, they did not preserve this issue, and we conclude that it was not plain error to give this instruction. We therefore affirm the judgment below.

## II. FACTS AND PROCEEDINGS

Donna Freitas obtained a screening mammogram in November 1996. Dr. Janice M. Anderson, a radiologist under contract with Alaska Radiology Associates, Inc., read the mammogram and declared it "stable." Fourteen months later Freitas felt a lump in her breast and obtained another mammogram. Dr. Anderson read the new mammogram and observed a relatively large density. She ordered follow-up testing which revealed that Freitas had a virulent form of breast cancer with lymph node involvement and metastases. An oncologist later testified that Freitas has "virtually no chance" for long-term disease-free survival or for long-term survival.

Freitas and her husband Daniel sued Dr. Anderson and Alaska Radiology, for whom Dr. Anderson is an independent contractor. They alleged that Dr. Anderson negligently interpreted Freitas's 1996 mammogram.

After a nine-day trial, a jury returned a verdict finding that the defendants had not been negligent. The superior court entered judgment for the defendants.

The Freitases argue on appeal that the superior court abused its discretion by allowing Dr. Denise Farleigh to testify about breast positioning during mammograms at Alaska Radiology. They also contend that the superior court erred as a matter of law by giving Jury Instruction No. 18. They ask us to reverse the judgment and remand for a new trial.

## III. DISCUSSION

### A. Standard of Review

We review for an abuse of discretion a decision of the superior court to admit

or exclude evidence.[1] "We will reverse a trial court's evidentiary ruling only when we are left with a definite and firm conviction that the trial court erred in its decision."[2]

▇ A challenge to a jury instruction presents a question of law that we review de novo.[3] If no timely objection to the jury instruction was made, we will only review the instruction for plain error.[4] We will find plain error in jury instructions only when there is an "obvious mistake creating 'a high likelihood that the jury will follow an erroneous theory resulting in a miscarriage of justice.' "[5]

### B. The Superior Court Did Not Err in Allowing Dr. Farleigh To Testify About Positioning During Mammography at Alaska Radiology or About the Training Its Technologists Receive.

▇ The Freitases contend that it was an abuse of discretion to permit Dr. Farleigh to testify about how Alaska Radiology technologists position patients during mammograms. At the time of trial Dr. Farleigh was the supervising radiologist for mammography at Alaska Radiology Associates, Inc. and its former president; she was also director of mammography at Providence Imaging Center and chair of the Department of Radiology at Providence Alaska Medical Center.

The Freitases argued at trial that Dr. Farleigh's proposed testimony about positioning and training was expert opinion testimony that Dr. Farleigh had not disclosed at her deposition, when she was asked if she had any other "opinions" about the lawsuit and she answered that she did not. They also argued that it interjected a "defense" that was "brand new." They claimed that defense counsel was "getting the same testimony in as if he said [']what is your opinion,['] he's just not using the opinion word." The Freitases argued that Dr. Farleigh was not merely providing fact testimony but instead was "back-door experting."

The superior court found that Dr. Farleigh was testifying as a fact witness and allowed the testimony, but precluded Dr. Farleigh from offering specific opinions about the adequacy of what was done in this case. The court explained that Dr. Farleigh would:

> [B]e essentially saying this is what happens in the clinic, this is what we do, this is what the procedure[s] are. She's not offering an opinion ... in this case—and she's precluded from looking at this [X]-ray, taking a look at it and commenting on where the position of the density is ... and saying boy, we did it right here.... [T]hat would make her an expert in the opinion sense ... [S]o as far as she's a fact witness, I'm going to allow her testimony.

Dr. Farleigh then testified at trial about how mammograms are performed at Alaska Radiology. She described how the breast is positioned during a mammogram at Alaska Radiology. She explained how Alaska Radiology's mammogram technologists are trained. She also testified that breast positioning has a bearing on the quality of mammogram films. She characterized breast positioning as "critical" to obtaining quality films.

The Freitases argue on appeal that Dr. Farleigh's testimony was expert opinion evidence that was not disclosed before trial, and that it was consequently an abuse of discretion to allow Dr. Farleigh to testify about breast positioning for mammograms. They also claim that the testimony raised a "new defense," was "far more prejudicial [than] probative," and "created confusion in the minds of the jurors." They claim that there was no time to prepare a response. We interpret these arguments as raising three main grounds why it was error to admit this testimony into evidence: (1) because Dr.

1. *Getchell v. Lodge,* 65 P.3d 50, 53 (Alaska 2003).

2. *Zaverl v. Hanley,* 64 P.3d 809, 812 n. 6 (Alaska 2003) (quoting *Walden v. Dep't of Transp.,* 27 P.3d 297, 301 (Alaska 2001)).

3. *Lynden, Inc. v. Walker,* 30 P.3d 609, 612 (Alaska 2001).

4. *Manes v. Coats,* 941 P.2d 120, 125 (Alaska 1997).

5. *Jaso v. McCarthy,* 923 P.2d 795, 800 (Alaska 1996) (quoting *Conam Alaska v. Bell Lavalin, Inc.,* 842 P.2d 148, 153 (Alaska 1992)).

Farleigh testified at her deposition that she had no other "opinions" about the lawsuit; (2) because the defendants otherwise failed to disclose this "expert" testimony before trial; and (3) because this testimony raised an undisclosed new defense.

Because the ultimate question is whether, under the circumstances, the trial court abused its discretion, it is necessary to discuss the facts at some length.

When the Freitases took Dr. Farleigh's deposition before trial, their attorney asked Dr. Farleigh if she had an opinion whether Dr. Anderson had met the standard of care. Dr. Farleigh testified that, based on her own review of the mammograms and Dr. Anderson's report, Dr. Anderson had met the standard of care. The Freitases' lawyer then asked Dr. Farleigh if she had any other opinions about the films or about the lawsuit that she had not already discussed. Dr. Farleigh said that she did not. At her deposition Dr. Farleigh did not discuss breast positioning or the training mammography technologists receive.

The issue of breast positioning during Donna Freitas's mammograms was raised at trial by counsel for the Freitases during her cross-examination of Dr. Anderson, one of the defendants. Some of the questions concerned the effect of positioning on the appearance of breast contents from year to year. Those inquiries seem intended to seek admissions that positioning differences could affect the ability to compare annual mammograms. Dr. Farleigh was then called by the defendants to testify, over the plaintiffs' objections, about mammogram techniques and procedures. Although Dr. Farleigh had expressed an opinion at her deposition that Dr. Anderson had satisfied the applicable standard of care, Dr. Farleigh did not offer opinions about that topic (or other core liability issues) at trial.

We first consider whether Dr. Farleigh's deposition statement that she had no more "opinions" about the films or the lawsuit required the court to exclude her testimony about positioning and training. This situa-

tion differs from that presented in *Zaverl v. Hanley*, in which we held that it was error to allow a surgeon to offer expert opinions at trial on subjects that he refused to discuss during his deposition.[6] It was inherently unfair in that case to allow the treating surgeon to testify about core liability issues that he was unwilling and unable to discuss at his deposition. His position at trial—that he was willing and qualified to testify about those topics—was completely inconsistent with his deposition position, and he did not otherwise alert the plaintiffs in advance that he intended to address those topics at trial.[7]

There is no such inconsistency here. First, Dr. Farleigh's trial testimony about positioning and training at Alaska Radiology was primarily about factual matters and contained little or no evidence that could be characterized as "opinion" testimony. Certainly she had specialized knowledge about mammography that a layperson does not possess. It was her professional expertise that allowed her to testify knowledgeably about positioning and training. But Dr. Farleigh's trial testimony contained only a few passages that might be considered "opinion" evidence in even the broadest sense. As the appellees correctly observe, "Dr. Farleigh gave no testimony on how positioning should have been performed for [Donna Freitas's 1996] mammography or whether Dr. Anderson or the technicians at the clinic used proper positioning" when taking Freitas's 1996 mammogram. Dr. Farleigh did characterize consistent positioning as "critical" to generating the maximum amount of information every time physicians see the patient. Assuming that such a characterization expresses an "opinion" and that her testimony about why things are done may have implicitly conveyed other inferences, these were not the sorts of opinions that she had to disclose at her deposition in response to counsel's question.

Second, the question asked at the deposition certainly required disclosure of expert opinions concerning core liability issues of the sort Dr. Farleigh had already discussed

6. *Zaverl v. Hanley,* 64 P.3d 809, 813–15 (Alaska 2003).

7. *Id.* at 814 & n. 10, 815.

at her deposition. But breast positioning and training were not core liability issues in this case. The Freitases disclaimed any interest in impugning the positioning practices of Alaska Radiology. The Freitases did not claim the defendants mis-positioned Donna Freitas or other patients during mammography. As a result of the Freitases' cross-examination of Dr. Anderson, positioning (and therefore training) became sufficiently relevant mid-trial to justify Dr. Farleigh's testimony. Notwithstanding that relevance, it cannot be said that positioning and training were so important that Dr. Farleigh's deposition answer obligated the trial court to preclude her from addressing these ancillary topics. Under the circumstances, the trial court was not obliged to exclude this evidence as fundamentally inconsistent with Dr. Farleigh's deposition answer.

We next consider whether the court abused its discretion by failing to exclude the evidence on the ground it was expert testimony defendants otherwise failed to disclose before trial. These circumstances convince us that there was no abuse of discretion: defendants' expert witness list stated that Dr. Farleigh would "testify with regard to the procedures utilized by Alaska Radiology Associates, Inc. with respect to the techniques for taking films and reading those"; even after the topic of positioning and training became relevant during trial, it was of ancillary importance; Dr. Farleigh's trial testimony contained no overt opinions on critical issues; the plaintiffs were free to object that specific questions called for impermissible opinion evidence; and the Freitases have not identified any particular testimony that overstepped the bounds the trial court—correctly, we think—imposed. Indeed, they have not even cogently explained how this evidence prejudiced them.

We also consider whether, as appellants assert, this testimony unfairly raised an undisclosed "new defense." It did not. It was not a defense. It was relevant to a topic raised at trial by the Freitases. There was no discovery violation. There was no need (or opportunity, given the topic's mid-trial relevance) to supplement pre-trial disclosures. Nor, to the extent appellants may imply that the prejudicial value of the evidence outweighed its relevance, have they demonstrated that they suffered undue prejudice. They do not even mention Alaska Rule of Evidence 403, the logical rule to discuss if a party wishes to make a plausible claim that the prejudicial value of evidence outweighs its probative value.[8] Plaintiffs did not ask for an opportunity to conduct a short mid-trial deposition of Dr. Farleigh to discover what she would say about positioning or training. And the trial court permitted the plaintiffs to offer rebuttal evidence on the positioning topic with their own experts. They then recalled Dr. Marianne Drucker as a rebuttal expert to discuss the effect of positioning. Further, given the plaintiffs' litigation position that there was nothing wrong with the positioning, there is no reason the trial court should have thought that admitting the testimony would be unduly prejudicial. Indeed, plaintiffs' lawyer asserted in closing argument that positioning was "another non-issue. We're not criticizing the positioning at all, the positioning was fine on the films." Nor does it appear positioning was critical to the defense. Defense counsel's discussion of positioning comprised only a small part of his argument to the jury.

This case does not require us to distinguish between a lay witness and an expert witness, or decide whether Dr. Farleigh was a hybrid witness eligible to express opinions about core liability issues.[9] The question here is whether under the circumstances the trial court abused its discretion by failing to exclude this evidence. We hold that it did not.

8. Evidence Rule 403 states: "Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

9. Cf. Getchell v. Lodge, 65 P.3d 50 (Alaska 2003); see also Miller v. Phillips, 959 P.2d 1247, 1250–51 (Alaska 1998).

## C. It Was Not Plain Error To Give Jury Instruction No. 18.

■ The superior court gave the jury Instruction No. 18, which set out a potential basis for finding medical malpractice.[10] The Freitases argue that the instruction was incomplete because it failed to identify one possible basis for finding negligence under AS 09.55.540, which specifies what is needed to prove medical malpractice, and therefore did not conform to the statute.[11] They claim that Instruction No. 18 required the jury to find for the defendants unless it found both that Dr. Anderson did not possess the training and experience of a physician practicing in her field, and also that she did not exer- cise that training and experience. They therefore claim that Instruction No. 18 was "incomplete," because it did not inform the jurors that they could find Dr. Anderson negligent "if she had the necessary knowledge and skill but simply acted in the wrong way."

The Freitases did not raise this objection in the superior court. They advanced other objections to Instruction No. 18 before trial, and the superior court made changes to the instruction in response to those objections. The court gave the parties a final opportunity to object to the instructions, and the Freitases did not make the objection that they now raise.[12] The Freitases consequently did

---

10. Instruction No. 18 provided:

You must determine the standard of professional learning, skill and care required of Defendant Dr. Anderson only from the opinions of the radiologists who have testified as witnesses as to such standard.

If you are not able, based on the expert testimony, to decide what level of knowledge, skill and care other reputable radiologists would more likely than not have possessed and used, you must return a verdict for the defendant.

If you are able, based on the expert testimony, to decide what level of knowledge, skill and care other reputable radiologists would more likely than not have used, you must then determine whether the defendant possessed and used such level of knowledge, skill and care or whether she failed to do so and therefore was negligent. Again, you shall make this decision only on the basis of opinions offered by the radiologists who have testified as experts on the applicable standard of care.

You should consider each such opinion and should weigh the qualifications of the witness and the reasons given for his opinion. Give each opinion the weight to which you deem it is entitled.

You must resolve any conflict in the testimony of witnesses by weighing each of the opinions expressed against the others, taking into consideration the reasons given for the opinion, the facts relied upon by the witness, and the relative credibility, special knowledge, skill, experience, training and education of the witness.

11. AS 09.55.540 provides in part:

(a) In a malpractice action based on the negligence or willful misconduct of a health care provider, the plaintiff has the burden of proving by a preponderance of the evidence:

(1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of the act complained of, by health care providers in the field or specialty in which the defendant is practicing;

(2) that the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and

(3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

12. The Court: This is the time set to put objections to proposed jury instructions on the record. . . . I'm going to ask counsel essentially to state their objections to the instructions they have for the record, please.

. . . .

The Court: I just want to note for the record, we have agreed to edit some of these jury instructions. Counsel will present a package, and other objections that we have talked about, they have all been withdrawn except these two that remain in Court's Exhibit 1. Is that right?

[Freitas]: Yes, sir.

[Anderson and Alaska Radiology]: That's right.

The Court: All right.

[Anderson and Alaska Radiology]: What I'll do is have my secretary retype these ones we're editing. I think, if it's okay, I'll bring them to court first thing in the morning, . . .

The Court: Sure.

[Anderson and Alaska Radiology]: . . . [A]nd you'd better look at them in case there's typos or a wrong word or something, before they go final, and then we can change it if need be.

The Court: Okay.

[Anderson and Alaska Radiology]: But it's correct, we've agreed—the packet we have in front of us, as far as I understand, we've agreed to that, and we each only had the one objection on each side, so . . .

The Court: Okay, great.

[Freitas]: And you have them all.

**702**

not preserve this objection.[13]

Plain error is therefore the applicable standard for reviewing this instruction.[14]

We perceive no plain error here. Instruction No. 18 could have been clearer, but it was not misleading. Moreover, Instructions No. 16 and 17, which also discussed negligence, were very clear. Instruction No. 16 submitted the statutory standard set out in AS 09.55.540(a).[15] Instruction No. 17 made it clear to the jury that it could find Dr. Anderson negligent if she failed to exercise expertise that she possessed.[16] And in this case there was no dispute about whether Dr. Anderson had the training and experience to practice her specialty. Therefore the instructions as a whole properly instructed the jury. It was consequently not plain error to submit Instruction No. 18 to the jury.

## IV. CONCLUSION

Concluding that the trial court did not err in allowing Dr. Farleigh to testify or in giving Instruction No. 18, we AFFIRM the judgment below.

The Court: All right.

13. Alaska Civil Rule 51(a) provides in part: "No party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds for the objection." *See also Jaso v. McCarthy*, 923 P.2d 795, 799–800 (Alaska 1996) (explaining that if party fails to object to jury instructions at trial, court will only review instructions for plain error); *Conam Alaska v. Bell Lavalin, Inc.*, 842 P.2d 148, 152–53 (Alaska 1992) (same).

14. *Manes v. Coats*, 941 P.2d 120, 125 (Alaska 1997).

15. Instruction No. 16 provided:

In a malpractice action against a health care provider, the plaintiff has the burden of proving by a preponderance of the evidence:
1. the degree of knowledge or skill possessed or the degree of care ordinarily exercised

under the circumstances, at the time of the act complained of, by health care providers in the field or specialty in which the defendant is practicing;
2. that the defendant either lacked this degree of knowledge or skill, or failed to exercise this degree of care; and
3. that as a proximate result of this lack of knowledge or skill, or the failure to exercise this degree of care, the plaintiff suffered harm that she would not otherwise have incurred.

In malpractice actions, the fact of the injury, standing alone, does not raise a presumption of malpractice.

16. Instruction No. 17 provided:

A physician has a duty to exercise the degree of skill and care expected of a reasonably prudent physician acting in the same or similar circumstances at the time of the care in question. Failure to exercise such skill and care is negligence.