NOTICE

*Memorandum decisions of this court do not create legal precedent.  A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MARY LOU KNUDSEN, | ) | |
| | ) | Supreme Court No. S-14941 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-02-11608 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| JAMES BERG, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1480 - March 5, 2014 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Mark Rindner, Judge.

Appearances: Mary Lou Knudsen, pro se, Olympia, Washington, Appellant.  Phyllis Shepherd and Stephanie D. Patel, Law Offices of Dan Allan & Associates, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

## I.     INTRODUCTION

Mary Lou Knudsen and James Berg were divorced in 2003.  Knudsen was awarded nine years of spousal support; when the support ended in 2012, she moved that it be extended.  The superior court denied her motion, and Knudsen appeals.  We affirm.

---

\*        Entered under Appellate Rule 214.

## II. FACTS AND PROCEEDINGS

### A. The 2003 Divorce Decree

Knudsen and Berg were married in 1980 and divorced in 2003. They had two grown children. Berg had been the household's sole income-earner during most of the marriage; at the time of the divorce, he had a yearly salary from British Petroleum (BP) of about $135,000 plus benefits. Knudsen was a stay-at-home mother who was unable to work because of chronic health problems.[1] By 2003 she had already suffered a stroke and a heart attack, and she continued to suffer from coronary artery disease, anxiety, hypertension, retinal dystrophy, and other medical problems that severely limited her activities.

These health conditions, along with her age (52 at the time of divorce) and long-time absence from the job market, formed the basis for the superior court's order of spousal support and the property division in the 2003 divorce decree. The court noted that Knudsen would continue to incur significant healthcare-related expenses, that she was at a much different station in life than Berg, and that she was unlikely to ever be permanently employed. Having taken into account the *Merrill* factors set out in AS 25.24.160(a)(4),[2] the court concluded that an unequal division of property in Knudsen's favor was warranted. The court awarded her 60 percent of the proceeds of the sale of the marital home (assumed to be $54,070); $100,000 from Berg's BP savings and retirement account; half the marital portion of Berg's retirement benefit (valued at $59,297); an Audi automobile valued at $32,870; an IRA worth $6,532; a range of artwork and personal belongings; none of the marital debt; and an additional $10,000

---

[1] The superior court found that Knudsen did work briefly selling cosmetics.

[2] *See Merrill v. Merrill*, 368 P.2d 546, 547 n.4 (Alaska 1962).

toward her attorney's fees. In the final accounting, Knudsen received $290,587 of the marital property's value while Berg received $208,397.

The superior court also decided in 2003 that Knudsen was entitled to an award of spousal support in the amount of $2,000 per month over the next nine years — a total of 108 payments. Although rejecting permanent spousal support, the court clearly saw the nine years of support as at least a partial bridge to the time when retirement funds would become available. The court noted that the "funds awarded to Ms. Knudsen from Mr. Berg's Savings and Retirement Account can provide income to her as early as when she reaches age 60" and, thereafter, the "[f]unds from Mr. Berg's retirement can provide income to Ms. Knudsen once Mr. Berg retires."

## B.    Procedural History

In August 2012, Berg wrote to inform Knudsen that his check dated that month was the last of the 108 payments he had been ordered to make for spousal support. Knudsen responded by filing, pro se, a Motion to Extend Spousal Support. She asserted that she continued to suffer from severe circulatory problems and was unable to work. She also claimed that she lacked the work credits necessary to be eligible for Social Security benefits and that she could not claim them until Berg retired and began to draw his own Social Security.[3] Berg opposed the motion, arguing that the court had already taken into account Knudsen's "age, health, and earning capacity when reaching an equitable distribution" at the time of the 2003 divorce. Knudsen prepared a reply, but she failed to file it in time to be considered before the superior court decided her motion.

---

[3]    Knudsen was mistaken that she needed to wait until Berg retired in order to draw Social Security benefits based on his credits. In his appellee's brief, Berg asserted that Knudsen could receive benefits as soon as he reaches age 62, and Knudsen acknowledged the accuracy of this assertion in her reply. Berg turned 62 on January 5, 2014.

The superior court denied Knudsen's motion by order dated September 20, 2012, although the order was not immediately served.[4] Knudsen nevertheless sent Berg a copy of a motion for reconsideration on September 21. She filed it with the court a few days later, on September 24, attaching the reply she had failed to file earlier. The reply made two main arguments. First, Knudsen claimed that despite the property division and spousal support, the original award had never been enough considering the substantial attorney's fees she owed from the divorce, her well-documented health problems, and the long time the money was meant to last. Second, she argued that her financial circumstances had changed in the nine years since the divorce decree; the cost of medical care had gone up and the purchasing power of her award had gone down. On September 25, 2012, the superior court denied the motion for reconsideration without making any additional findings, though noting that it had reviewed Knudsen's "late filed" reply.

Knudsen appeals, contending that: (1) the superior court improperly applied AS 25.24.170(a) and AS 25.24.160(a)(2) in denying her motion to extend spousal support; (2) the court failed to give her the deference due a pro se litigant; (3) the court improperly failed to consider her reply in support of her motion to extend spousal support; and (4) the order denying her motion was not served, and both that order and the order denying reconsideration were inadequate because they lacked findings of fact.

---

[4] The order was emailed to the parties a week later, on September 28, 2012.

## III. STANDARDS OF REVIEW

We review a superior court's denial of a motion to modify spousal support for abuse of discretion.[5]  We also review for abuse of discretion the superior court's "decisions about guidance to a pro se litigant."[6]

## IV. DISCUSSION

### A. The Superior Court Properly Applied AS 25.24.160(a)(2) And AS 25.24.170(a).

Knudsen's main point on appeal is that the superior court erred by denying her motion to modify her award of spousal support under AS 25.24.160(a)(2) and AS 25.24.170(a).  Alaska Statute 25.24.160(a)(2) provides that the court, at the time of divorce "or at any time after judgment," may award spousal support (termed "maintenance" in the statute) if such an award will fairly allocate the economic effect of divorce, taking into consideration a number of factors.  Factors relevant here include:

> (A) the length of the marriage and station in life of the parties during the marriage; (B) the age and health of the parties; (C) the earning capacity of the parties . . . ; (D) the financial condition of the parties, including the availability and cost of health insurance; . . . [and] (F) the division of property . . .".[7]

Alaska Statute 25.24.170(a) provides that an award of spousal support may be modified at any time after judgment.  We have held that modification of a support order should be granted only where there has been a "material and substantial change in

---

[5]  *Skvarch v. Skvarch*, 876 P.2d 1110, 1111 n.3 (Alaska 1994) (citing *Hinchey v. Hinchey*, 722 P.2d 949, 954 (Alaska 1986)).

[6]  *Greenway v. Heathcott*, 294 P.3d 1056, 1062 (Alaska 2013) (quoting *Shooshanian v. Dire*, 237 P.3d 618, 622 (Alaska 2010)).

[7]  AS 25.24.160(a)(2).

circumstances" that is "more or less permanent rather than temporary."[8]  In *Headlough v. Headlough*, we decided that a mistake as to how much money would be required to meet a person's financial needs may be considered a change in circumstances in the context of child support.[9]  We later declined, however, to apply the same rule in the context of spousal support.[10]  We explained that "[t]he reason for this distinction is that in child support cases the court's paramount concern is the best interests of the child, and in spousal support cases finality of judgment is relatively more important."[11]  Thus, in the spousal support context, "[t]he change in circumstances test relates to changes in external facts, not to mistakes."[12]  While this may include a change in the parties' financial abilities, the change must be "unanticipated" and "permanent."[13]

Knudsen's arguments regarding a material and substantial change in circumstances focus on the factors of AS 25.24.160(a)(2) and how they were arguably misapplied in 2003.  She argues that the superior court "clearly erred when it assumed [she] would be able to sustain her life with the [2003] property settlement."  She points out that the superior court found in 2003 that she had significant health problems that would preclude her from gainful employment and argues that "[t]ime has not changed this [but] only continued to eat away at [her] resources."  Knudsen also claims that the 2003 order intended that her settlement last until she could collect from Berg's retirement or

---

[8]  *Curley v. Curley*, 588 P.2d 289, 291 (Alaska 1979).

[9]  639 P.2d 1010, 1013 (Alaska 1982).

[10]  *Larson v. Larson*, 661 P.2d 626, 628 n.2 (Alaska 1983).

[11]  *Hinchey v. Hinchey*, 722 P.2d 949, 952 n.5 (Alaska 1986).

[12]  *Larson*, 661 P.2d at 628.

[13]  *Hinchey*, 722 P.2d at 952.

Social Security benefits, and that in the absence of those sources she lacks sufficient income to purchase health insurance. Finally, she contends that the 2003 order failed to consider the $30,000 in attorney's fees that she owed at the end of the divorce proceedings and how that would impact her financial resources.

Berg responds that "things are the same now (in 2012) as they were then (in 2003), but she wants a different order than the one from 2003." We agree. None of Knudsen's arguments identify a material and substantial change in circumstances under AS 25.24.170(a). Knudsen is claiming that the superior court made a number of mistakes in the 2003 divorce decree that have continued to impact her over time, but the change of circumstances test for spousal support does not grant relief for mistakes, only for changes in external facts. If Knudsen believed the superior court erred in its 2003 decree, her remedy was to timely appeal that decision, which she did not do.

In any event, the 2003 property division and award of spousal support appear to have contemplated all the issues Knudsen raises on this appeal. The superior court thoroughly discussed Knudsen's health problems, including the cardiovascular conditions from which she continues to suffer. The court noted her age, employment history, and health limitations in concluding that it was unlikely she would ever be gainfully employed, a prediction that apparently proved correct. The superior court discussed Knudsen's significant uncovered medical expenses as well as the cost of her health insurance — which was then, as it is now, a challenging expense for her. It was for all of these reasons that the superior court awarded Knudsen the larger share of the marital residence, $100,000 from Berg's BP savings and retirement account, over $59,000 from Berg's pension plan, nine years of spousal support, and $10,000 toward her attorney's fees. It further appears that in describing when Knudsen might access funds from Berg's BP pension and retirement savings account, the superior court was merely describing Knudsen's likely way forward, not creating an additional entitlement.

Consequently, considering Knudsen's motion to extend spousal support, the superior court could easily have concluded that none of her current circumstances constitutes a *change* in an external fact justifying a modification of the 2003 award.

Knudsen's other argument is that there has been a significant decrease in the purchasing power of money, along with a drastic increase in the cost of hospitalization and health care that the court could not have foreseen in 2003. Neither of these arguments is supported by evidence.[14]

We conclude that Knudsen failed to demonstrate a material and substantial change in circumstances that would justify a modification of her spousal support. The superior court did not abuse its discretion in denying Knudsen's motion.

### B. Knudsen Was Not Procedurally Disadvantaged As A Pro Se Litigant.

Knudsen alleges a number of procedural flaws underlying the denial of her motion to modify spousal support, primarily that she was denied deference as a pro se litigant. She cites the proposition from *Haines v. Kerner* that the allegations of a pro se litigant "however inartfully pleaded" should be held "to less stringent standards than formal pleadings drafted by lawyers."[15] This is indeed an accepted proposition,

---

[14] In fact, the Consumer Price Index shows no significant change in annual rates of inflation since the early 1990s, indicating that the alleged increases in inflation were both foreseeable and not drastic. *See* U.S. DEP'T OF LABOR, BUREAU OF LABOR STATISTICS, CPI DETAILED REPORT, DATA FOR DEC. 2013, Tbl. 24 (2013) *available at* www.bls.gov/cpi/cpid1312.pdf. Similarly, data collected by various federal agencies show that the annual rate of increase in health care expenditures has been consistent since the early 1990s and has actually steadily declined since the 2003 divorce decree. *See* CTRS. FOR MEDICARE & MEDICAID SRVCS. NATIONAL HEALTH EXPENDITURES, Tbl. 1 (2014) *available at* www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends and-Reports/NationalHealthExpendData/downloads/tables.pdf.

[15] 404 U.S. 519, 520 (1972).

particularly with regard to procedural matters.[16]  But our thorough review of the record does not disclose any instances in which Knudsen was procedurally disadvantaged by her pro se status.

Knudsen contends that she was prejudiced when she mistakenly asked for an "extension of her spousal support" rather than "a modification of her award of spousal support," which is what she intended to request.  But it was clear from the motion what Knudsen was requesting; Berg responded to the motion on its merits; and there is no indication that the title of the pleading had any bearing whatsoever on the superior court's decision.

Knudsen also complains that the superior court's order denying her motion for reconsideration referred to her attached reply as "late filed."  She reasons that "she was being held to a higher standard" than Berg because the court did not make similar note of a late submission by him.  But regardless of whether the reply was "late filed,"[17] the superior court expressly stated that it had been considered, so the court's characterization of it as "late" is without consequence.

Knudsen's remaining complaints also appear to be inconsequential.  She points out that the September 20 order denying her motion to extend spousal support was not immediately served on either party.  Alaska Civil Rule 77(d) directs the clerk of the court to serve a copy of the order on both parties immediately upon entry, while Alaska

---

[16]    *DeNardo v. Calista Corp.*, 111 P.3d 326, 330 (Alaska 2005); *see also Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987).

[17]    The reply was indeed late.  Berg's opposition was filed by mail on September 6, 2012, meaning that Knudsen's reply was due on September 18. *See* Alaska R. Civ. P. 77(d) (allowing five days for a reply); Alaska R. Civ. P. 6(a), (c) (excluding weekends from the computation where the period allowed is less than seven days and adding three calendar days for service by mail).  Knudsen apparently filed the reply on September 21, three days late.

Civil Rule 58.1(d) instructs the clerk to include a certificate of distribution with the order. The record shows that the order was not certified as having been served the day it was signed, on September 20, 2012; rather it was emailed to the parties on September 28.

In *Mullins v. Local Boundary Commission*, we held that there was no prejudice to the parties where the superior court mailed the order of dismissal four days after it was entered and the order of clarification seven days after it was entered.[18] Such delays simply pushed back the times for future filings based on the dates listed in the clerk's certificate of distribution, and neither party was disadvantaged.[19] Here, too, there is no reason to believe that Knudsen was prejudiced by the court's delay in distributing the September 20 order, as it only meant that both parties' deadlines were extended by a few days. And in any event, Knudsen was clearly aware of the order regardless of the delay in its distribution, since she served Berg a copy of her motion to reconsider the order the day after the judge signed it.

Finally, Knudsen complains of the court's failure to make findings or to set out the legal basis for its orders. But Alaska Civil Rule 52(a) provides that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions," with exceptions not applicable here. The court did not abuse its discretion in the form of its orders.

## V. CONCLUSION

We AFFIRM the orders of the superior court.

---

[18] 226 P.3d 1012, 1016 (Alaska 2010).

[19] *Id.*